[S. F. No. 4394.   Department One.—October 7, 1907.]

CITY OF PETALUMA, Respondent, v. ELIZA J. WHITE et al., Defendants.  ELIZA J. WHITE, Appellant.

NEW TRIAL—INSUFFICIENCY OF EVIDENCE TO SUPPORT FINDINGS—ORDER GRANTING—APPEAL—PRESUMPTION.—Where a motion for a new trial is made on the ground, among others, that the findings were not sufficiently supported by the evidence, and an order granting the motion is made in general terms, not purporting to exclude any particular ground specified in the notice of the motion, it will be presumed on appeal, in support of the order, that the motion was granted upon the ground of the insufficiency of the evidence to sustain the findings.

EMINENT DOMAIN—DECREE OF CONDEMNATION—DESCRIPTION—STREET— REFERENCE TO OFFICIAL MAP.—A decree condemning certain land described as a tract "included between the southwesterly line of Western Avenue and a line drawn parallel with said boundary line, distant twelve and one-half feet therefrom, to-wit, that portion of lot 186 as laid down and numbered upon the official map of the city of Petaluma, fronting on Western Avenue," will be construed as referring to the line of such avenue as established by the official survey and delineated on the official map of the city, and not to the line established by fences constructed by the occupants of the adjoining lots.

ID.—AFFIDAVIT—SIGNATURE UNNECESSARY.—In the absence of a statute or rule of court requiring it, the affiant's signature to an otherwise regular affidavit is not necessary.

ID.—FAILURE TO NOTIFY PART OF DEFENDANTS.—A failure to serve notice on one or more landowners whose lands were sought to be condemned for the widening of a street will not vitiate the condemnation proceedings as to the owners of land who were properly notified.

ID.—ACCEPTANCE OF AWARD—WAIVER OF IRREGULARITY.—In proceedings for the condemnation of land an owner who voluntarily accepts the amount awarded for the taking of his land waives the right to claim that the proceedings were irregular, and affirms their validity; and such waiver and affirmance is binding on his successor in interest.

APPEAL from an order of the Superior Court of Sonoma County granting a new trial. J. Q. White, Judge presiding.

The facts are stated in the opinion of the court.

F. A. Meyer, for Appellant.

Lippitt & Lippitt, and T. J. Geary, for Respondent.

ANGELLOTTI, J.—This is an action to recover for the use of the public as a part of a street, a strip of land about seven and one half feet wide, extending along the front of the lot of defendant White a distance of about one hundred and fifty feet. Defendant White had judgment, and plaintiff made a motion for a new trial. The motion was granted, and this appeal is from the order granting such motion.

The defendant's lot is a portion of block 186 of the city of Petaluma, according to the official map of said city. This land has a frontage of about one hundred and fifty feet on the southerly line of the public street known as Western Avenue. Proceedings for the widening of this street were had in 1879, resulting in a decree of condemnation made by the district court on October 21, 1879, by which a twelve-and-one-half-foot-strip of land along the southerly line of the street was condemned for the use of a public street, upon the payment to the owners of the land taken of the several amounts awarded to them as damages. At that time, one J. R. Robinson was the owner of a portion of lot 186, which portion included all thereof subsequently acquired by defendant. The decree of condemnation described the portion of such land taken as follows: ''All that portion of the following described tract of land which is included between the southeasterly line of Western Avenue and a line drawn

parallel with said boundary line, distant twelve and one half feet therefrom, to wit: That portion of lot 186 as laid down and numbered upon the official map of said city of Petaluma fronting 315 feet on Western Avenue and adjoining Baker Street and lands of D. B. Franklin, and belonging to J. R. Robinson.'' The damages to the owner caused by such taking were assessed at one hundred and forty-one dollars. The damages awarded were accepted August 13, 1881, by John A. McNear, a grantee under Robinson, in ''full satisfaction of his judgment against the said city in that matter.'' In the year 1885 said McNear, by grant, bargain, and sale deed, transferred defendant's portion of said lot 186 to her, the deed reciting an understanding that a small strip of about seven feet along the front of the lot is a portion of Western Avenue. Plaintiff's claim in this action is that the land sued for is a part of the twelve-and-one-half-foot strip condemned in the proceedings hereinbefore referred to.

Upon the claim thus made by plaintiff, the findings of the trial court were in favor of defendant. These findings were attacked on the motion for a new trial on the ground that they were not sufficiently supported by the evidence. The order granting a new trial being in general terms, not purporting to exclude any particular ground specified in the notice, we must here assume in favor of the order that the motion was granted upon the ground of insufficiency of evidence to sustain these findings.

The question whether the land involved in this action is a part of such twelve-and-one-half-foot-strip must be determined by an ascertainment of the location of the southeasterly line of Western Avenue mentioned in the condemnation proceedings and decree. The defendant claims that there was no substantial conflict upon the proposition that taking the avenue as then fenced upon the ground as constituting the street referred to, and the fence on the southerly side of the avenue as constituting the southeasterly line mentioned, the land here involved did not fall within the strip here described. It may be assumed that this claim is well founded. But it is very clear to us that the southeasterly line of the avenue referred to is the one established by the Stratton survey and delineated on the official map of the city of Petaluma, made in conformity therewith, and not the line established by fences

constructed by the occupants of the lots.  It is uncontradicted that the width of this street as laid out by Stratton and as shown on said map was sixty feet.  The act of the legislature authorizing the widening proceedings gave the trustees of the city the power to take proceedings for the widening of the street from Howard Street to the city limits to a uniform width of seventy-two and one half feet, and required the trustees to describe the lands to be taken by reference to the numbers of the lots in which they were contained, as the same are laid down upon the official map of the city.  (Stats, 1877-8, p. 203.)   There is no pretense that any land was acquired for this purpose other than such as was acquired by the condemnation proceedings.  The only land sought to be taken by the trustees of the city for this purpose, consisted of portions of various designated lots *"as laid down upon the official map of said city,"* fronting on the southerly line of the street, constituting a twelve-and-one-half-foot-strip on the southerly side thereof.  No description of any other land to be taken is to be found in any of the proceedings for the widening, before the trustees, or in the condemnation action in court, and the decree of condemnation embraced no other land.  It is therefore apparent that if an existing fence line not on the southerly line of the street as shown on the map, but somewhere to the north thereof, was the line intended, there would be a strip of land between such fence and the northerly line of the lots as shown on the map that would not be condemned to the use of the public, but would remain in private ownership, which strip would separate the street as inclosed by fences from the strip acquired by condemnation to constitute a part of the street.  The land lying to the north of the northerly line of and outside of the lots *as laid down on the map,* and to the south of the existing fence and owned by the adjoining lot owners, if not already a part of the street, would not be included in the description of the land condemned, if that description is to be read as contended for by the defendant. Such a result would be most absurd, and, of course, was never intended.  The intention was to condemn the northerly twelve and one half feet of each of the lots as the same were "laid down and numbered upon the official map of said city." Land fronting on the street was to be taken, not land fronting on the strip in private ownership separating it from the street.

CLII Cal.—13

The description, contained in the decree as to lot 186, which is
the same as the description as to each of the other lots affected,
cannot reasonably be construed otherwise than as including
the northerly twelve and one half feet thereof as shown upon
the map.    Defendant's construction thereof would make it
include land not a portion of lot 186 as laid down on the map,
which is impossible in view of the language used.    The south-
easterly line of Western Avenue when taken as the northerly
boundary of lot 186 as such lot is laid down and numbered
upon the official map of the city, which is the effect of the
description in the decree, cannot, in the nature of things, be
other than the southeasterly line of the street *as shown upon*
*such map,* the line on which said lot fronts *according to said*
*map.*    There is nothing in the case of *Alemany* v. *City of Peta-*
*luma,* 38 Cal. 553, that supports defendant's contention in this
regard.    That was an action to compel a conveyance by the
city to the plaintiff, under the Townsite Act of Congress, of a
strip of land, where the city attempted to assert title to such
strip of land as a part of a street merely because it appeared
on the map of the city as a part of the street, while, as a mat-
ter of fact, it was at the time of the making of the map, and
had been for many years preceding such making, in the actual,
exclusive and *bona fide* occupation of the plaintiff's grantor,
and had never been part of any existing street.    It was held
that as against an occupant not consenting thereto, any such
attempt "to open a new street through his premises, or to
enlarge an old one so as to infringe upon them, or to convert
the land in his possession into a public square or park, finds no
warrant in the act of July 1, 1864," the act of Congress known
as the "Townsite Act," [13 Stats. 343], the act under which
the survey and map of the city of Petaluma were made.    This
has no application here.    There is nothing to indicate that
Western Avenue as laid out by Stratton and shown on the
map included any land without the consent of any occupant
thereof, and so far as appears, all the persons claiming land
fronting thereon, including defendant's predecessor in title,
accepted deeds from the city for their lots *according to said*
*map.*    The decision might be of aid to defendant were she
seeking to establish title in herself as to the strip lying be-
tween the fence in the street and the northerly boundary line
of lot 186 as shown upon said map, but it cannot, upon the

record before us, affect the question of the proper construction of the description in the condemnation proceedings. Upon the question as to the location on the ground of the southeasterly line of Western Avenue, or the northerly line of lot 186, as shown upon such map, the most that can be said for defendant is that there was a substantial conflict in the evidence. The trial court was, therefore, authorized to grant a new trial on the ground of insufficiency of evidence to sustain the decision, and its action in that regard is conclusive upon us.

Section 5 of the act of the legislature under which these proceedings were had provided that the district court should "have and take jurisdiction" upon the filing in such court of "a copy of all the proceedings of the board of trustees . . . and the original affidavits of publication of notices and all proof of service," etc., and it is claimed that this section was not complied with, in that two purported affidavits of publication were not signed by the affiants and that all the proceedings were therefore void. The affidavits were correct in all other respects. Regardless of other possible answers to this objection, the affidavits were sufficient, although not signed by the affiants. In the absence of a statute or rule of court requiring it, the affiant's signature to an otherwise regular affidavit is not necessary. (*Ede* v. *Johnson,* 15 Cal. 53; *Lutz* v. *Kinney,* 23 Nev. 279, [46 Pac. 257]; vol. 2 Century Digest, p. 27.) There was no such statutory requirement here.

It is further urged that the condemnation proceedings were void because the affidavit of personal service of notice of the application to the court did not show personal service upon the owners of several lots. It did, however, show such service on Robinson as the owner of lot 186, as well as upon the owners of all but a few of the lots. It appears to be held that the failure to notify one or more of the landowners in a proceeding of this character will not vitiate the proceedings as to those properly notified. (Lewis on Eminent Domain, 2d ed., secs. 383, 531; *Poundstone* v. *Baldwin,* 145 Ind. 139, [44 N. E. 191].) It is well settled that when the owner voluntarily accepts the amount awarded for the taking of his land he waives his right to claim that the condemnation proceedings were irregular, and affirms the validity of such proceedings. (See Lewis on Eminent Domain, sec. 531; *Matter of Woolsey,* 95 N. Y. 135; *Poole* v. *Breese,* 114 Ill. 594, [3 N. E. 714];

*Marling* v. *Burlington*, 67 Iowa 331, [25 N. W. 268].)    Such an act is, of course, binding on his successor in interest.

The order granting a new trial is affirmed.

Shaw, J., and Sloss, J., concurred.