[Civ. No. 31824. Second Dist., Div. Four. Aug. 13, 1968.]

KATHERINE R. HICKS, Plaintiff and Respondent, v.
SAMUEL G. HICKS, Defendant and Appellant.

Lippitt & Billet and Charles L. Lippitt for Defendant and Appellant.

Dennis Fredrickson for Plaintiff and Respondent.

BISHOP, J. pro tem.*—

### NARRATIVE OF EVENTS

The two parties to this case were married in Virginia in October of 1933. Years later they entered into a separation agreement in Cincinnati, Ohio, bearing the date of June 29, 1961. From the recitals in this agreement we learn that: the parties were already living apart; the husband (as we shall refer to our defendant throughout this opinion) had filed an action for a divorce in Ohio; the wife would depart from the home, jointly owned, in Ohio, the husband to retain sole possession; the wife would take with her a nut dish and some other designated articles, agreeing to leave all others; the husband assumed the responsibility of all indebtednesses of the two; "5. As *further alimony,* [emphasis is ours] in addition to the obligations specified . . . above, (the husband) agrees to pay directly to (the wife) the sum of ten thousand ($10,000.00) dollars, payable at the rate of fifty ($50.00) dollars per week. . . . 11. This agreement and settlement is, and shall be, a full and final settlement between the parties as to all claims of either against the other, of every kind and nature, and particularly for alimony, support, division of property, expenses and attorney's fees."

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

The husband fell behind in his payments of 50 dollars a week, and on August 4, 1964, the wife brought an action in Kentucky for the $6,400 balance that had become due upon his default. On August 28, two events took place: the wife obtained a judgment for $6,400 and the husband obtained one in his action for a divorce. A copy of the separation agreement was made a part of, and approved, in the Ohio divorce decree.

## ISSUES IN CASE

Our action was commenced in Los Angeles County, on February 23, 1965, the wife seeking to obtain a California judgment based on that entered for $6,400 plus interest, in Kentucky. The husband defaulted and a judgment for $6,400 principal plus $401 interest was awarded the plaintiff on September 14, 1965. A writ of execution was issued and used and then the proceedings of particular concern to us on this appeal began. The husband made a motion to have the writ stayed on the ground that the judgment had been discharged in bankruptcy; the motion was denied; and he appealed. It is here that the crucial question is presented. ██ As stated in *Yarus* v. *Yarus* (1960) 178 Cal.App.2d 190, 195 [3 Cal.Rptr. 50, 54] : "A discharge does not release the bankrupt from a debt for alimony, support or maintenance which is or may become due. [Cases cited.]" So our question is: "Did the defendant's obligation to pay to plaintiff $6,400 come under the head of alimony?"

We are put to a choice, in this case: Follow the code and correct procedures strictly, or, as counsel have, with liberality, giving the merits of the appeal the right of way. Whichever course we pursue leads, on this appeal, to the same conclusion: the order denying defendant's motion, for a stay of the writ of execution of plaintiff's judgment, should be left standing.

██ We begin with defendant's notice of appeal. It states that it is "from that Memorandum and Order of the Hon. James G. White . . . dated October 31, 1966, wherein said defendant's motion to stay execution on a foreign judgment against him was denied." We could quickly conclude our labors by dismissing this as a "purported appeal," for we take judicial notice that there was no judge "James G. White" in the Los Angeles Superior Court on October 31, 1966; there was no motion made, in this case, to stay execution on a foreign judgment; and, necessarily, there was no order made denying such a motion. However, on the date

mentioned there was an order made denying defendant's motion to stay the execution of the judgment entered in this case; and the order was made by the Honorable James G. Whyte. Under the circumstances we shall read the husband's notice of appeal as one directed at that order.

The notice of the motion said that the motion "will be based on the fact that [the judgment heretofore entered in this matter] was entered as a general claim in a bankruptcy of defendant and a further enforcement of it is now estopped by defendant's discharge in bankruptcy, upon the files and records in this case, and upon the Declaration of Charles L. Lippitt which is attached hereto." "The files and records of this case," up to this notice, revealed nothing about any bankruptcy or a discharge in bankruptcy, so that defendant's motion is left depending upon the declaration "which is attached hereto."

Section 2015.5 of the Code of Civil Procedure authorizes the use of a declaration under certain conditions. We read in a footnote by this court in *People* v. *United Bonding Ins. Co.* (1966) 240 Cal.App.2d 895, 896 [50 Cal.Rptr. 198, 199] [fn. 2] : "Neither declaration is dated; neither declaration indicates where it was executed. Since, under section 2015.5 of the Code of Civil Procedure, such a declaration may be used in place of an affidavit only where it sets forth 'the date and place of execution within this state,' the supporting papers were clearly insufficient. . . ." The declaration attached to our defendant's "motion" was not dated. Nor was it subscribed by the declarant. "It is true, of course, that the section [§ 2015.5, Code Civ. Proc.] requires that the document must be subscribed by the declarant, . . ." as pointed out in *People* v. *Pierce* (1967) 66 Cal.2d 53, 59 [56 Cal.Rptr. 817, 821, 423 P.2d 969]. The "motion to stay execution" was dated by Charles L. Lippitt and subscribed by him. That notice and the declaration, each, at the bottom, had a line, where the name was to be subscribed, below which the name was typed. We are doubtful if the failure to have the declaration subscribed can be overlooked, but it is true that it is attached to the "motion," which is subscribed and dated, and it is not a very great strain of interpretation to accept the declaration as being subscribed. Plaintiff has not complained of these discrepancies, and we are not resting our decision on them. (See *Cope* v. *Cope* (1964) 230 Cal.App.2d 218, 234-235 [40 Cal. Rptr. 917, 926] and *Hirschman* v. *Saxon* (1966) 246 Cal.App. 2d 589, 593 [54 Cal.Rptr. 767, 769].)

Resolving all doubts in favor of the defendant, up to this point, what basis does he give us for the order, staying the execution, which he desired? As Exhibit C attached to the declaration, we have the Discharge of Bankrupt which includes: "It Is ORDERED that the said Samuel Gaines Hicks be, and he hereby is, discharged from all debts and claims which . . . are made provable against his estate, except such debts as are . . . excepted from the operation of a discharge in bankruptcy."

The crucial question that the parties have argued is whether the provision in the separation agreement that the defendant would pay the plaintiff as much as ten thousand dollars at the rate of 50 dollars per week, was, in reality, alimony, or a division of the property.

Plaintiff's position on appeal is weakened by the fact that she filed no affidavit or declaration in opposition to defendant's motion. No evidence was taken. Where, then, do we get any basis for her position that her judgment was predicated on her husband's promise to pay alimony? We find it in the documents attached to and relied upon in her points and authorities in opposition to motion to stay execution. The first of them is a certified copy of records of the Jefferson Circuit Court of Kentucky. Among them is the separation agreement, to which we referred in our narrative of events. Husband, on appeal, takes no exception to sufficiency of proof of separation agreement, etc. Why should we?

We agree with the trial judge's interpretation of its terms. The fact that the husband went bankrupt so short a time after the document was executed is a basis for believing that it was not property then possessed that the parties were distributing. The fact that it was to be paid in comparatively small sums weekly, is in harmony with the concept of alimony or support. Paragraph numbered "11" in the separation agreement shows clearly that the claim of "alimony" or "support" had not been overlooked. Most important is the use of the word, in paragraph numbered "5": "As further alimony, in addition to the obligations specified . . . above": These words introduce the promise to pay the ten thousand at the rate of 50 dollars per week. It is "alimony."

The husband, in his brief on appeal, refers to the absence of any evidence that would have served to throw light on the meaning with which the parties twice referred to "alimony." Perhaps there was no such evidence available. If there was any that would have supported the husband's position, he

should have offered it. A debatable interpretation of the meaning of a writing may be made certain by extrinsic evidence, but is not to be discarded because there is no such evidence.

 The husband, in his brief, also attacks the Kentucky judgment on the ground that ''the record is completely devoid of any statement, either by a proof of service or by a recital in any of the documents, that the defendant in the Kentucky case was duly served with process.'' No further comment is required than this quotation from *Muller* v. *Reagh,* 173 Cal. App.2d 1, 5 [343 P.2d 135], followed by one from the first case it cites: ''The rule is well established that a judgment of a court of general jurisdiction is presumed to be valid, i.e., the court is presumed to have jurisdiction. . . . The judgment need not recite the jurisdictional facts nor need the party relying upon such judgment plead or prove such facts. The burden is upon the party who attacks the judgment to show lack of jurisdiction. (Code Civ. Proc., § 1963, subd. 16; *People* v. *d' A Philippo,* 220 Cal. 620 [32 P.2d 962]; . . .'' Other cases were cited, but it will suffice to quote one sentence from the *d' A Philippo* case (p. 625): ''In the absence of proof to the contrary, the jurisdiction of a court in a sister state . . . , from which a duly authenticated judgment which is regular upon its face is presented in evidence, will be presumed.''

We are persuaded that the order made by the Honorable James G. Whyte on October 31, 1966, denying defendant's motion to stay execution in this case, should be affirmed, and we do affirm it.

Files, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied September 4, 1968, and appellant's petition for a hearing by the Supreme Court was denied October 9, 1968. Peters, J., was of the opinion that the petition should be granted.