[Civ. No. 12611. Fourth Dist., Div. One. May 16, 1973.]

RENEE T. DODGE et al., Plaintiffs and Respondents, v.
HARRY M. FREE, as County Clerk, etc., et al.,
Defendants and Respondents;
JAMES E. HAMILTON, as District Attorney, etc.,
Real Party in Interest and Appellant.

**COUNSEL**

James E. Hamilton, in pro. per., for Real Party in Interest and Appellant.

Burke, Williams & Sorensen and Royal M. Sorensen for Plaintiffs and Respondents.

No appearance for Defendants and Respondents.

**OPINION**

**WHELAN, Acting P. J.**—James E. Hamilton, real party in interest, has appealed from a judgment directing a peremptory writ of mandate to Harry M. Free, the County Clerk of Imperial County, that said clerk file a petition for the recall of Hamilton as District Attorney of Imperial County.

The petitioners for the writ are Renee T. Dodge, Robert K. Dodge, Mary Agnes A. Poloni, Evan Derrick and Michael F. Ferrill.

There was presented to Free on August 28, 1972, a group of 205 separate sheets of paper containing signatures of persons who petitioned therein for the recall of Hamilton.

The number of valid signatures required to compel a recall election for

Hamilton was 2,538. The petition for the writ alleged that the recall petition bore 3,038 valid signatures.

All the sheets were identical in format on the face, and, with some difference as noted hereafter, on the back side.[1]

Each sheet had spaces for 20 names and signatures of the petitioners, of which six were on the face of the paper.

On the reverse side of some of the sheets, in addition to the spaces for signatures, there was at the bottom a form for an affidavit by the circulator for compliance with Elections Code section 27203. There were 13 of those bearing the signature of a circulator, only one of which had been sworn to before a notary.

One hundred thirty-four of the sheets had in place of an affidavit form a form intended for use under penalty of perjury.[2]

As filled in, only one of the purported declarations under penalty of perjury was dated. None of them was subscribed in the sense of bearing a signature below the matters declared to be true.

In the case of an additional 57 of the sheets that had the affidavit form on the back, there were attached forms for a declaration under penalty of perjury identical to those found in 134 of the other sheets, and which had been cut off from other sheets of that type. None of those 57 sheets had a date for the declaration intended to be made under penalty of perjury, and none had a signature below the form of declaration.

---

[1]The opening paragraph of the facing side is reproduced here: WE, THE UNDER-SIGNED, QUALIFIED REGISTERED VOTERS, RESIDING IN THE COUNTY OF IMPERIAL, STATE OF CALIFORNIA, DO HEREBY PETITION THE HONORABLE BOARD OF SUPERVISORS OF THE COUNTY OF IMPERIAL TO CALL AN ELECTION TO ELECT A SUCCESSOR TO JAMES E. HAMILTON, IMPERIAL COUNTY DISTRICT ATTORNEY.

[2]The text of that form is reproduced here, as well as the manner in which in all but one instance it was filled in:

A-F-F-I-D-A-V-I-T

STATE OF CALIFORNIA ) ss
COUNTY OF IMPERIAL )

Edward F. Kennedy, UNDER PENALTY OF PERJURY, DEPOSES AND SAYS,

I am the person who circulated the attached recall petition, or section thereof. I personally observed each signer place his signature thereon, the date of each signature and his residence address. To the best of my information and belief each signer is a registered qualified voter in the County of Imperial, State of California, and each signature is the genuine signature of the person whose name it purports to be. I am, and at all times while circulating the said petition was, a registered qualified voter of the County of Imperial, State of California. My residential voting address is: 455 W. Orange Ave., El Centro, CA 92243.

Nine of the sheets had one or more signatures placed thereon prior to March 4, 1972; 10 others had one or more signatures placed thereon on March 4; the earliest date on 50 others was a later date in March; the earliest date on 27 others was in April; on 25 others, in May; on 26 others, in June; on 14 others, in July; on the remaining 44, in August.

The total number of signatures placed on the nine sheets mentioned prior to March 4, 1972, was 59.

There were in all 69 different circulators of the 205 petition forms. Five persons accounted for 98 of the petition forms. None of those five was among the circulators of the nine petition forms bearing a date prior to March 4, 1972.

None of the sheets referred to any other of them; specifically, none of those circulated on or after March 4 showed on its face that it was a part of a petition the circulation of which had been started prior to March 4.

It is one of the contentions of the real party in interest that the proceedings for recall in this case must comply with the provisions of chapter 1146 of the Statutes of 1971, which became effective March 4, 1972.

Chapter 1146 added Elections Code section 27201.5 and amended section 27202. Section 27201.5 reads: "No signature may be affixed to the petition until the proponents have served, filed and published a notice of intention to circulate a recall petition, containing the name of the officer sought to be recalled and the title of his office, a statement in not more than 500 words of the grounds on which the recall is sought, and the name and address of at least one, but not more than five, proponents. The notice of intention *shall be* served, personally or by certified mail, on the officer sought to be recalled, and a copy thereof with a certificate of the time and manner of service shall be filed with the county clerk." [Italics added.]

Section 27202 as amended reads: "Within seven days after the filing of the notice of intention, the officer sought to be recalled may file with the county clerk an answer in not more than 500 words to the statement of the proponents and, if an answer is filed, shall serve a copy thereof, personally or by certified mail, on one of the proponents named in the notice of intention. The statement and answer are intended solely for the information of the voters and no insufficiency in the form or substance thereof shall affect the validity of the election or proceedings.

"Before any signature may be affixed to a recall petition, the petition shall bear a copy of the notice of intention, statement and answer of the

officer sought to be recalled, if any. If the officer sought to be recalled has not answered, the petition shall so state."

Neither of those sections was complied with in the circulation of the petition forms that collectively were presented for filing.

Hamilton contends also that verification of the authenticity of the signatures on the petition called for by section 27203 is fatally lacking in those 191 sheets bearing a form, either as originally printed or added by stapling, for a declaration under penalty of perjury, and in the 12 sheets purporting to bear affidavits without the attestation of a notary.

It is baldly stated on behalf of the petitioners that each of the purported declarations under penalty of perjury was signed by the circulator who declared under penalty of perjury that the required things were done.

They argue also that although there is no date it is obvious that the affidavit has served its purpose, for the circulator has sworn he saw each date placed thereon; and in any event the affidavit is not a part of the petition, and a defect is not sufficient to invalidate the petition.

In support of the last assertion, petitioners cite *Whittemore* v. *Seydel,* 74 Cal.App.2d 109 [168 P.2d 212]. The cited case dealt with a provision in the statutes covering the referendum of a municipal ordinance. The provision required that the circulator of the petition state in his verifying affidavit the dates between which the signatures were placed. The court held the provision, already then repealed, to be in conflict with the Constitution. The court also said the earliest and latest dates appearing on the petition would show the dates between which the signatures had been placed on the petition.

Article 23, section 1 of the California Constitution provides in part:

"The recall shall also be exercised by the electors of each county, city and county, city and town of the State, with reference to the elective officers thereof, under such procedure as shall be provided by law.

". . . . . . . . . . . . . . . . .

"In the submission to the electors of any petition proposed under this article all officers shall be guided by the general laws of the State, except as otherwise herein provided.

"This article is self-executing, but legislation may be enacted to facilitate

its operation, but in no way limiting or restricting the provisions of this article or the powers herein reserved."

Elections Code section 27203 provides:

"Each separate paper shall have attached to it an affidavit made by a voter of the county or particular district, as the case may be. The affidavit shall contain the residence address of the affiant, and shall state that the affiant circulated that particular paper and saw written the signatures appended thereto; and that according to the best information and belief of the affiant:

"(a) Each is the genuine signature of the person whose name it purports to be.

"(b) The signer is a voter of the county or particular district."

An affidavit is defined by Code of Civil Procedure section 2003 as "a written declaration under oath . . . ." However, Code of Civil Procedure section 2015.5 provides that:

"Whenever . . . any matter is required . . . to be supported, evidenced, established, or proved by . . . affidavit . . . such matter may . . . be supported, evidenced, established, or proved by the unsworn statement, declaration, verification, or certificate, in writing of such person stating the date and place of execution within this State and which is subscribed by him and certified or declared by him to be true 'under penalty of perjury,' which certification or declaration may be in substantially the following form:

"I certify (or declare) under penalty of perjury that the foregoing is true and correct."

■ It is obvious that if the lack of a date on the purported declarations under penalty of perjury, or the fact that the circulator did not sign below the matters alleged to be true is a fatal deficiency, 191 of the sheets are eliminated as valid parts of a recall petition. The other sheets, even if all were completely filled with signatures and otherwise sufficient, would contain no more than 300 signatures, an inadequate number.

We are asked by petitioners to say either that the verification requirements of Elections Code section 27203 need not be complied with, or that an intended declaration under penalty of perjury which does not state the date of execution as required by Code of Civil Procedure section 2015.5 nevertheless may take the place of the affidavit under that section.

The clear purpose of the requirement is that the circulator of the peti-

tion make affidavit that the signatures on the petition are those of the persons whose signatures they purport to be.

While it is the duty of the county clerk or registrar of voters to determine whether the names appearing on the petition are those of registered voters in the county, the authenticity of the signatures is to be vouched for additionally by the circulator of the petition in the manner provided by law.

The following decisions at least suggest that the specifications of Code of Civil Procedure section 2015.5 must be met to raise what is meant to be a declaration under penalty of perjury to the dignity of an affidavit: *People* v. *United Bonding Ins. Co.,* 272 Cal.App.2d 441, 443, 446 [77 Cal.Rptr. 310]; *People* v. *United Bonding Ins. Co.,* 240 Cal.App.2d 895 [50 Cal. Rptr. 198].[3]

There are other cases that have held the lack of a date or an incorrect date in an affidavit to be nonessential where the statute did not require a date. (See *Bank of Venice* v. *Hutchinson,* 19 Cal.App. 219 [125 P. 252], and cases cited therein.)

In other cases dealing with the subject, a declaration defective because not showing the date and place of execution was held not to affect a judgment which had a sufficient basis in another declaration executed in full conformity with the statute (*Hirschman* v. *Saxon,* 246 Cal.App.2d 589, 593 [54 Cal.Rptr. 767]); a declaration was held to show the place of execution when showing as a statement of venue, "State of California, County of San Bernardino." (*McCauley* v. *Superior Court,* 190 Cal.App.2d 562, 565 [12 Cal.Rptr. 119].)[4]

The form suggested by Code of Civil Procedure section 2015.5 is intended to be followed by a signature certifying the truth of "the foregoing."

We think it manifest from that example that the Legislature, in using the

[3]In *People* v. *United Bonding Ins. Co.,* 240 Cal.App.2d 895 [50 Cal.Rptr. 198], the court noted the defect in a footnote at page 896, and observed the point had not been raised in the trial court and that it could have been cured in time had the point been made.

[4]In *Hicks* v. *Hicks,* 264 Cal.App.2d 890, 893 [70 Cal.Rptr. 878], appeal was made from an order denying a motion made in the trial court which was based upon a notice of motion dated and subscribed by the movant and a declaration which was not dated and had only the movant's name typed in rather than a signature. The order appealed from was affirmed, although the court observed: "We are doubtful if the failure to have the declaration subscribed can be overlooked, but it is true that it is attached to the 'motion,' which is subscribed and dated, and it is not a very great strain of interpretation to accept the declaration as being subscribed. Plaintiff has not complained of these discrepancies, and we are not resting our decision on them."

word "subscribe," gave it the primary meaning "to write (as one's name) underneath." (See *People* v. *Pierce,* 66 Cal.2d 53, 59, fn. 5 [56 Cal.Rptr. 817, 423 P.2d 969].)

In *People* v. *Pierce, supra,* 66 Cal.2d 53, 59, the court said: "It is true, of course, that the section requires that the document must be subscribed by the declarant, but the petition clearly met this requirement since Pierce signed the document voluntarily at its end and before the attestation clause allegedly inserted involuntarily was added. Section 2015.5 does not require the declaration under penalty of perjury to appear at the end of the document, although the form suggested in the section contemplates that this is the ordinary placement of the declaration, and it is no doubt the better practice."[5]

In the instant case the affidavit form underneath the heading "State of California, County of Imperial" is followed by a space for the name of the affiant and the words "being duly sworn deposes and says."

Such introductory language with the name of the affiant is not out of place in an affidavit, which in the absence of a specific requirement in the applicable statute need not be subscribed by or bear the signature of the affiant. (*City of Petaluma* v. *White,* 152 Cal. 190, 195 [92 P. 177].)

Therefore, the presence of the name of the affiant in the first line of an affidavit does not import that the name is the signature of the affiant placed there by him.[6]

There was testimony from which it might be inferred that in the forms on which a purported declaration under penalty of perjury had been stapled the names of the circulators were placed by the respective circulators. There is no such evidence as to the forms on which the purported declaration under penalty of perjury was originally printed, except as to

---

[5]See also the form approved by the Judicial Council for "Petitions for Release from or Modification of Custody," which ends with the following:
"I, the undersigned, say:
"I am the petitioner in this action; the above document is true of my own knowledge, except as to matters that are stated in it on my information and belief, and as to those matters I believe it to be true.
"Executed on . . . . . . . . . . . at . . . . . . . . . . . . . . . . . ., California.
"I declare under penalty of perjury that the foregoing is true and correct.
. . . . . . . . . . . . . . . . . . . . . . . ."
(Signature)

[6]It has even been held that the name appearing in the first line of an affidavit is not necessarily the name of the affiant when the affidavit was subscribed by someone else and the jurat shows it was "subscribed and sworn to" before the certifying officer. (*Pope* v. *Kirchner,* 77 Cal. 152, 154 [19 P. 264].)

14 forms on each of which the name of the circulator and his address appear to be in the same handwriting as that of one of the persons who signed the petition.

 The Constitution provides, for the recall under procedures to be established by the Legislature. We are not prepared to say that the safeguard against possible forgery of signatures which is the evident purpose of Elections Code section 27203 is unreasonable, or an undue restraint upon the exercise of the constitutional right of recall.

We are not prepared to say that the affidavit called for by Elections Code section 27203 may be replaced by something that is neither an affidavit nor a declaration under penalty of perjury within the meaning of Code of Civil Procedure section 2015.5 because it fails to state the date of execution and it is not subscribed.[7]

The affidavit of the circulator is not a redundancy which may be dispensed with. (*Wallace* v. *Board of Trustees,* 116 Cal.App. 82 [2 P.2d 426]; *Moore* v. *City Council,* 244 Cal.App.2d 892, 898 [53 Cal.Rptr. 603].)

 We hold, therefore, that the verification requirements of Elections Code section 27203 must be met; that they are not met by purported declarations under penalty of perjury that are neither dated nor subscribed by the circulator of the petition; that only the single petition form that shows it was sworn to before a notary public meets the requirements of the statute.

The original failure to have the voting precinct of each signer of the petitions placed alongside his name was rectified and plays no part in our decision, although the statute in that regard must be complied with. (Elec. Code, § 46.)

Prior to the time the 1971 legislation went into effect there was nothing in the statutory procedures for recall of county officers that required or

---

[7]See *Palm Springs Alpine Estates, Inc.* v. *Superior Court,* 255 Cal.App.2d 883, 888 [63 Cal.Rptr. 618], where the court said: "No such affidavit appears in the record here. 'An affidavit is a written declaration under oath, made without notice to the adverse party.' (Code Civ. Proc., § 2003.) The document referred to above as the 'Affidavit of Gladys Towles Root' upon which the entire proceeding is based is ·not a written declaration under oath, nor is it an unsworn statement or declaration of the alleged facts certified or declared to be true 'under penalty of perjury' as permitted by section 2015.5 of the Code of Civil Procedure. The acknowledgment appearing at the end of the document reciting only that Mrs. Root appeared before a notary public 'and acknowledged that she executed the same' is not in any sense the equivalent of a jurat or of a verification. In the absence of a sufficient affidavit the entire proceeding is void *ab initio.* [Citations.]"

permitted the registration of proponents or sponsors of a recall, and nothing that provided for a notice of intention to circulate a recall petition.

Robert K. Dodge, who presented the assembled 205 petition forms to Free for filing on August 28, was one of those who circulated several of the sheets for signatures. He had arranged for the printing of them.

On March 2 he had shown to Free one of the sheets the circulation of which Dodge started that day.

In bringing to the attention of the county clerk on March 2 the fact that he was then actively engaged in circulating a recall petition, Dodge, one of the petitioners herein, seems to have desired one of the benefits of the legislation which became effective two days later; at the same time he wished to forestall such of the provisions of that legislation as might prove a hindrance.

So far we can find no fault with him, and had there been a single identifiable petition launched on March 2 and filed with the necessary signatures within 180 days thereafter, it might be said that the action taken before March 4 gave rise to rights that might be brought to fruition as though under the preexisting legislation.

The integrated identity of a petition might also have been preserved by having each of the forms state it was a part of a petition the circulation of which had been commenced on March 2.

Neither of those situations is present here. The grouped-together forms actually presented for filing were 205 in number, of which only 9 bore signatures placed on them prior to March 4. The total number of such signatures was 59. According to the testimony they were presented as one petition only when all 205 sheets were submitted to the clerk.

We doubt that the obtaining of 59 signatures prior to March 4 generated such rights in those 59 signatories or in the 4 circulators of the 9 petition forms containing those 59 signatures[8] that those rights would cover the circulation of 196 petition forms which was started on or after March 4 by 65 other circulators.

Each of the 205 forms contains the same language above the signatures, and each in the circulator's affidavit or declaration speaks of "the attached recall petition, or section thereof." All in their format are identical. Thus they carry the stamp of a common source, and a common purpose.

---

[8]One might wonder why one circulator should have circulated four of the forms each bearing one or more signatures placed thereon on March 3 but each of which also contains signatures placed thereon at later dates.

But each on its face is entitled to equal dignity with the others. If it were asked at what point in time the various circulators became proponents of the recall, the evidence gives no answer. Since under the preexisting law proponents with official standing were unknown, it cannot be said that any of the four circulators of the first nine forms to be circulated had a proprietary interest in the recall movement.

It cannot be said, therefore, that in the circulation of petition forms first circulated on or after March 4, the new legislation could be ignored.

Such a problem is unlikely to recur, and we base our decision not on the failure to comply with the 1971 legislation, but on the lack of verification of the signatures by the circulators of all but one of the petition forms.

The judgment is reversed with directions to enter judgment denying the petition for writ of mandate.

Ault, J., and Cologne, J., concurred.

The petition of the plaintiffs and respondents for a hearing by the Supreme Court was denied August 1, 1973.