[Civ. No. 6303. Fifth Dist. Aug. 14, 1981.]

CAROL WILCOX, Petitioner, v.
GALE S. ENSTAD, as County Clerk, etc., Respondent;
VERNIE CRISMAS et al., Real Parties in Interest.

**COUNSEL**

Kenneth N. Hastin for Petitioner.

Ralph B. Jordan, County Counsel, and Forest Greber, Deputy County Counsel, for Respondent.

Borton, Petrini & Conron, James P. Lough and George F. Martin for Real Parties in Interest.

## OPINION

HANSON (P. D.), J.—Petitioner Carol Wilcox, a trustee of the Kern High School District, seeks, in an original proceeding for writ of mandate, to compel respondent Gale S. Enstad, Kern County Clerk, to take no further action on a recall petition brought by real parties to remove petitioner from office. The application for mandate presents a question of interpretation of section 27215 of the Elections Code and related legislation enacted in 1979, setting forth procedures for the county clerk to determine the sufficiency of voter signatures to qualify for the ballot a petition for recall of a local elective officer. We grant relief for the reasons discussed in the opinion.

The verified petition alleges that on or about November 21, 1980, real parties began circulating a petition to recall petitioner (Wilcox) from her elective office as a trustee of Kern High School District. Pursuant to Elections Code section 27210, subdivision (e), real parties had 160 days to gather signatures.

On January 29, 1981, real parties filed with respondent Gale S. Enstad, County Clerk of Kern County (clerk), their 66-section petition with a total of 14,375 signatures. Under Elections Code section 27211, the number of valid signatures required to qualify the recall petition for the ballot is 12,459. The clerk has the duty of determining the sufficiency of the signatures in petitions to recall elective officers of a school district. (Elec. Code, §§ 27002, 27212-27217.)

After accepting the petition for filing, respondent clerk checked the validity of the signatures using the random-sample method authorized by Elections Code section 27215. Elections Code sections 27214 and 27215, enacted in Statutes 1979, chapter 818, sections 6 and 8, provide: "§ 27214.... Except as provided in Section 27215, within 30 days from the date of filing of the petition, the clerk shall examine the petition, and from the records of registration ascertain whether or not the petition is signed by the requisite number of voters. A certificate showing the results of this examination shall be attached to the petition.

"In determining the number of valid signatures, the clerk may use the duplicate file of affidavits maintained, or may check the signatures against facsimiles of voters' signatures, provided that the method of preparing and displaying the facsimiles complies with law.

"The clerk shall notify the proponents of the petition as to the sufficiency or insufficiency of the petition.

"If the petition is found insufficient, it may be supplemented within 10 days of the date of certificate by filing additional petition sections, identical to the petition originally filed except as to signatures and matters required to be affixed by the signers. Within 10 days after the supplemental petition sections are filed, the clerk shall make a certificate showing whether or not the petition, as supplemented, is sufficient. The failure to secure sufficient signatures, shall not preclude the filing of a new petition on the same subject, at a later date.

"If the petition is found sufficient, the clerk shall certify the results of the examination to the governing board at the next regular meeting of the board."

"§ 27215. . . . (a) Within 30 days from the date of filing of the petition, if, from the examination of petitions pursuant to Section 27214, more than 500 signatures have been signed on the petition, the clerk may use a random sampling technique for verification of signatures. The random sample of signatures to be verified shall be drawn in such a manner that every signature filed with the clerk shall be given an equal opportunity to be included in the sample. Such a random sampling shall include an examination of at least 500 or 5 percent of the signatures, whichever is greater.

"(b) If the statistical sampling shows that the number of valid signatures is within 90 to 110 percent of the number of signatures of qualified voters needed to declare the petition sufficient, the clerk shall examine and verify each signature filed.

"(c) In determining from the records of registration what number of valid signatures are signed on the petition, the clerk may use the duplicate file of affidavits maintained, or may check the signatures against facsimiles of voters' signatures, provided that the method of preparing and displaying the facsimiles complies with law.

"(d) The clerk shall attach to the petition, a certificate showing the result of this examination, and shall notify the proponents of either the sufficiency or insufficiency of the petition.

"(e) If the petition is found insufficient, no action shall be taken on the petition. However, the failure to secure sufficient signatures shall not preclude the filing later of an entirely new petition to the same effect.

"(f) If the petition is found to be sufficient, the clerk shall certify the results of the examination to the governing body at the next regular meeting of the board."

Section 27216, amended by 1979 Statutes, chapter 818, section 9 provides: "If the certificate shows that the petition is insufficient, no action shall be taken on it; but the petition shall remain on file."

On February 6, 1981, respondent clerk determined, based on examination of a 5 percent random sample of the signatures, that the petition contained less than 90 percent of the number of valid signatures required to qualify (10,976 or 88.09 percent). Respondent notified the proponents and the press but did not immediately attach to the petition a certificate indicating the results. On February 12, 1981, the clerk prepared and served a certificate of insufficiency on real parties and included a statement that real parties might submit supplemental petition sections within 10 days of the notice (e.g., to and including Feb. 23, 1981) to cure the deficiency. Also, the notice set forth the procedure that the clerk proposed to use in handling any supplemental signatures submitted.[1] Under the explicit terms of the statute, the petition was insufficient when the statistical sampling showed the number of valid signatures to be less than 90 percent.

According to the declaration of petitioner's attorney, Kenneth N. Hastin, attached to the petition for mandate filed in the superior court and included as an exhibit in this proceeding, real parties began circulating supplemental petitions on February 6, 1981; on Monday through Wednesday, February 9 to 11, 1981, petitioner repeatedly requested that the clerk issue a certificate of insufficiency; on February 17, 1981,

---

[1]The notice states: "If a 5 percent random sample of the supplemental signatures filed, when added to the signatures found to be valid in the 5 percent random sample of the signatures previously filed, indicates a validity rate between 90 and 110 percent of required signatures, then all signatures submitted will be checked. If the 5 percent random sample of all signatures so filed indicates a validity rate equal to 110 percent of signatures required the petition will be certified as sufficient. However, if the validity rate is less than 90 percent, the petition will be certified as insufficient. [¶] As you are aware, the number of required signatures is 12,459; 110 percent of such requirement is 13,705."

petitioner was first furnished with a copy of the notice dated February 12.

On February 23, 1981, petitioner filed an action for mandate in Kern County Superior Court alleging that "[t]he action of the County Clerk in permitting the circulation of additional supplemental petitions for a period from the sixth of February, 1981 to the 23rd of February or for any period is improper, illegal and without foundation in law," and seeking an order prohibiting the clerk from proceeding further with the recall petition. An alternative writ issued, and respondent and real parties answered. The matter was heard and the writ denied by the superior court on March 2, 1981.

Real parties filed supplemental sections containing additional signatures on or before February 23, 1981. After denial of the petition in superior court, respondent clerk, on or about March 4, 1981, determined that the combined valid signatures in the original and supplemental filings fell within 90 to 110 percent of the number required to qualify, and verified individually all of the signatures, totaling 17,150; the clerk found that sufficient valid signatures had been filed. On March 10, 1981, respondent prepared and signed a certificate of sufficiency of the recall petition (Elec. Code, § 27217) to be submitted to the board of trustees of the high school district; however, prior to submission, a petition for mandate was filed in this court. A stay order issued on March 10, 1981. Respondent and real parties each filed preliminary opposition, petitioner filed a closing reply, and on April 6, this court ordered that an alternative writ of mandate issue. Respondent answered and real parties filed a demurrer and answer; petitioner filed a final reply.

■ Although the judgment of the superior court denying the petition for mandate is an appealable order, where appeal would not provide an adequate remedy, a new petition may be filed in a higher court. (Cal. Civil Writs (Cont.Ed.Bar 1970) Choice of Court, § 8.2, p. 152.) The inadequacy of petitioner's remedy at law was conclusively determined by the granting of the alternative writ. (*Agricultural Labor Relations Bd. v. Superior Court* (1976) 16 Cal.3d 392, 402 [128 Cal. Rptr. 183, 546 P.2d 687]; see *Coalition for Fair Rent v. Abdelnour* (1980) 107 Cal.App.3d 97, 101 [165 Cal.Rptr. 685], "This being an election matter raising significant questions of statewide importance in

the interpretation of laws governing the initiative procedure, our exercise of original jurisdiction is particularly appropriate. [Citations.]")

Real parties demurred to the petition (Cal. Rules of Court, rule 56(c)) on the ground that it "does not state facts sufficient to constitute a cause of action in that respondent, County Clerk, does not have a clear and present legal duty to issue a certificate of insufficiency for the recall petition of petitioner, Carol Wilcox." The demurrer raises the ultimate legal questions presented in the remaining issues and need not be discussed separately.

■ Petitioner asserts that, by the language of Elections Code section 27215, the clerk is under a mandatory duty to take no further action on the recall petition because the random-sample verification procedure showed less than 90 percent of the number of valid signatures required and the statute does not provide for supplementation. We agree.

Respondent and real parties counter that such an interpretation is unconstitutional, and that section 27215 must be construed with section 27214 to permit petitions to be supplemented regardless of the method of verification followed by the clerk. Obviously, this was not the intent of the Legislature.

The first principle of statutory construction is to find that intent by looking to the language of the statute. ■ "The courts must give statutes a reasonable construction which conforms to the apparent purpose and intention of the lawmakers. [Citation.] It is fundamental in statutory construction that courts should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.] Moreover, they should construe every statute with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." (*Clean Air Constituency* v. *California State Air Resources Bd.* (1974) 11 Cal.3d 801, 813-814 [114 Cal.Rptr. 577, 523 P.2d 617]; *County of Madera* v. *Superior Court* (1974) 39 Cal.App.3d 665, 668 [114 Cal.Rptr. 283].)

■ Analyzing Elections Code sections 27214 and 27215 enacted by Statutes 1979, chapter 818, it seems apparent that the Legislature intended that the counties save money in processing recall petitions by removing the requirement for verification of each signature in specified instances. In checking petitions containing more than 500 signatures,

evidently the smallest number considered to constitute a statistically valid sample, the clerk may utilize a random-sample method of checking the validity of signatures. (Elec. Code, § 27215, subd. (a).) The statute requires examination of at least 500 signatures or 5 percent of the total, whichever is greater, and mandates that the sample be drawn in such a fashion that every signature is given an equal opportunity to be included. (Elec. Code, § 27215, subd. (a).) If the results of the random sample show the number of valid signatures to be within 90 to 110 percent of the number required to qualify, the signatures must be checked individually. (Elec. Code, § 27215, subd. (b).) By reasonable implication, if the random sample shows over 110 percent of the necessary valid signatures, the petition is deemed to qualify without further checking. However, "[i]f the petition is found insufficient, no action shall be taken on the petition. . . . [T]he failure to secure sufficient signatures shall not preclude the filing later of an entirely new petition to the same effect." (Elec. Code, § 27215, subd. (e).) This language clearly indicates that if fewer than 90 percent of the required signatures are shown to be valid by the statistical-sampling technique, the petition is insufficient and merits no further action. No reference to supplementation is included.

The parallel statute, section 27214, states that "[e]xcept as provided in Section 27215," the clerk shall check signatures individually, and "[i]f the petition is found insufficient, it may be supplemented within 10 days of the date of certificate by filing additional petition sections, . . . Within 10 days after the supplemental petition sections are filed, the clerk shall make a certificate showing whether or not the petition, as supplemented, is sufficient. The failure to secure sufficient signatures, shall not preclude the filing of a new petition on the same subject, at a later date."

The conclusion that the purpose of allowing the random-sample method is to economize is reinforced by a comparison with the predecessor statutes (see *County of Los Angeles* v. *Frisbie* (1942) 19 Cal.2d 634, 639 [122 P.2d 526]). Prior to the enactment of chapter 818 of Statutes 1979, the procedure for verification of signatures in petitions for recall of local officials was as follows: "Within 20 days from the filing of the recall petition the clerk shall ascertain whether or not the petition was signed by the requisite number of qualified signatures. He shall file with the petition a certificate showing the results of the examination. The clerk shall give the proponents a copy of the certificate upon their request." (Former Elec. Code, § 27212.)

"If the clerk certifies the petition to be insufficient, it may be supplemented within 10 days of the date of certificate by filing additional petition sections identical to the petition originally filed except as to signatures and matters required to be affixed by the signers." (Former Elec. Code, § 27214.)

"Within 10 days after the supplemental copies are filed, the clerk shall make a certificate showing whether or not the petition as supplemented is sufficient." (Former Elec. Code, § 27215.)

"If the certificate shows that the petition as supplemented is insufficient, no action shall be taken on it; but the petition shall remain on file." (Former Elec. Code, § 27216.)

Petitioner argues that as a means to the end of saving money, the Legislature reasonably determined that in samples large enough to allow use of a random-sample technique, it is worthwhile to complete full verification only where the statistical survey shows valid signatures to be within 10 percent of those necessary to qualify. Where the number of valid signatures is shown to be less than 90 percent, the petition is statistically certain not to qualify, and a saving of money is realized by providing that the signatures on such petitions need not be individually examined. Under this reasoning, if supplementation were permitted after a random sample showed less than 90 percent of the necessary valid signatures, the purpose for the expedited procedure would be defeated. Repeated random samples leading to the necessity for a full count would be more expensive than an initial full examination, and the petition still might not qualify for the ballot.

Petitioner's construction finds support in the unambiguous language of subdivision (e) of section 27215, that "[i]f the petition is found insufficient, no action shall be taken . . . ." In contrast, section 27214 provides that, if after individual examination of the petition signatures, the petition is found insufficient, "it may be supplemented . . . ."[2]

A second, highly persuasive ground for concluding that the Legislature did not intend to permit supplementation where a random sample shows less than 90 percent of necessary signatures, is the total absence

_____

[2]In the initial drafts of Assembly Bill No. 668 of the 1979-1980 regular session adding sections 27214 and 27215 of the Elections Code, there was no provision for supplementation in either statute.

of any indication how such supplementation might be accomplished. If a full count of original and supplemental sections were required in every case where the sample shows the original petition to be insufficient, as in section 27214, the statistical sample would be totally superfluous.

Elections Code section 27215 contains no procedure for statistically assessing the combined effect of original and supplemental petition sections. The actual procedure proposed by the clerk[3] in this case illustrates the problem. Under respondent's approach, a 5 percent random sample of the 2,775[4] additional signatures would be checked and the number of valid signatures added to the results of the original sample to project a total validity rate. However, the statute specifically provides that a random sample must include at least 500 signatures, presumably because 500 was determined to be the minimum sample necessary to provide reliable data. The clerk's method presumes that the *quality* of the supplemental sections (a new sample) is identical to that of the original filing; however, this is the question to be determined, and the 5 percent sample is inadequate to provide a reliable answer in samples under 10,000. Putting both the original and supplemental sections together and taking a new random sample of the total might provide a valid assessment of the supplemented petition, but such a procedure would involve additional expense and is not suggested by the language of section 27215.

■ We recognize that recall statutes should be liberally construed to enable citizens to exercise this right. "'The courts are ever mindful of the desirability of having recall petitions presented to the people through election without delay or excessive expenditure of time, money, and effort (*Gage* v. *Jordan* [1944] 23 Cal.2d 794, 799 [147 P.2d 387]). And legislation affording the people a right to initiate legislation, repeal legislation or recall a public official is to be given the same liberal construction as that extended to election statutes generally.'" (*Moore* v. *City Council* (1966) 244 Cal.App.2d 892, 901 [53 Cal.Rptr. 603], quoting from *Reites* v. *Wilkerson* (1950) 99 Cal.App.2d 500, 502-503 [222 P.2d 81].) However, recognition of the policies favoring exercise of the right of recall does not allow the courts to enlarge the scope of a procedural statute where the statutory provisions are clear. (See *Dodge* v.

---

[3]See footnote 1, *ante.*

[4]According to respondent's figures, the total number of signatures submitted was 17,150; the original petition sections filed January 29, 1981, contained 14,375 signatures.

*Free* (1973) 32 Cal.App.3d 436, 444 [108 Cal.Rptr. 311].) In an analogous situation, this court stated: "We are not unmindful of the well-established rule that pension legislation, such as that here involved, should be liberally construed, resolving all ambiguities in favor of the applicant. [Citations.] However, this rule of liberal construction is applied for the purpose of effectuating the obvious legislative intent [citation] and should not blindly be followed so as to eradicate the clear language and purpose of the statute . . . ." (*Neeley* v. *Board of Retirement* (1974) 36 Cal.App.3d 815, 822 [111 Cal.Rptr. 841].)

Here, the legislative purpose is destroyed if supplementation is permitted. In section 27214, examination of additional signatures involves no undue administrative burden because the signatures on the original petition already have been examined individually. Supplementation under section 27215 when the random sample shows less than 90 percent of the signatures required would change the basic structure and efficacy of the expedited procedure.

Real parties cite *Coalition for Fair Rent* v. *Abdelnour, supra*, 107 Cal.App.3d 97, 103-107, a case involving availability of a supplemental petition under the provisions of Government Code section 34460, concerning initiatives to amend or repeal city charters, in support of the necessity to imply such a supplemental period here. The *Abdelnour* court found that the absence of specific authorization in the statute for a supplemental petition was not controlling, and stated that the test of the validity of a regulation implemented by the clerk was "whether such regulation furthers or impedes the statutory purpose." (107 Cal.App.3d at p. 103.)

The *Abdelnour* case is distinguishable; unlike the statute involved therein, sections 27214 and 27215 are clearly intended to provide alternative procedures, and section 27215 by its terms excludes supplementation where the statistical survey shows less than 90 percent of the signatures required to qualify. Since the procedure devised by the clerk does not further the manifest purpose of the Legislature in enacting section 27215, the rationale of *Abdelnour* does not apply.

Respondent and real parties point out that the office of the Secretary of State, charged with oversight of the elections process in California, interprets section 27215 to allow a supplemental filing period. While an administrative interpretation or practical construction by the

officials who are required to administer a statute is entitled to great weight, "'it is the duty of [the] court, when such a question of law is properly presented, to state the true meaning of the statute ..., even though this requires the overthrow of an earlier erroneous administrative construction.'" (*People* ex rel. *Dept. Pub. Wks* v. *Ryan Outdoor Advertising, Inc.* (1974) 39 Cal.App.3d 804, 810 [114 Cal.Rptr. 499], quoting from *Bodinson Mfg. Co.* v. *California E. Com.* (1941) 17 Cal.2d 321, 326 [109 P.2d 935].)

Respondent and real parties argue that petitioner's construction of the statute renders it unconstitutional in that the literal language of sections 27214 and 27215 permits different treatment of persons similarly situated in the unfettered discretion of the clerk and therefore this court must construe section 27215 to include an opportunity to supplement.

No rule of construction permits the wholesale revision of an enactment contrary to the import of its plain language. (See *Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 282 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206]; *Vallerga* v. *Dept. Alcoholic Bev. Control* (1959) 53 Cal.2d 313, 318 [1 Cal.Rptr. 494, 347 P.2d 909].) The court is not authorized to "insert qualifying provisions ... not intended by the Legislature and may not rewrite a statute to conform to an assumed legislative intent not apparent ...." (*Bruce* v. *Gregory* (1967) 65 Cal.2d 666, 674 [56 Cal.Rptr. 265, 423 P.2d 193].)

In view of the express language used, and the apparent purpose of the Legislature in enacting section 27215, it is not reasonably possible to imply a supplemental filing period where a random sample shows less than 90 percent of the required signatures.[5]

Even though under section 27215 petitions with more than 500 signatures *may* be verified either individually, as in section 27214, in which case supplementation is available, or by the random-sample method, which provides that if the statistical survey shows valid signatures to be fewer than 90 percent of those required, no further action shall be taken (Elec. Code, § 27215, subd. (e)), it does not follow that the statute is unconstitutional.

---

[5]Where the initial random sample shows 90 to 110 percent of the required number of signatures pursuant to subdivision (b) of section 27215, the clerk is required to proceed with an examination of each signature. Once this process is completed, no greater burden or expense is involved in allowing supplemental sections than exists under section 27214, and an opportunity to supplement is implied.

■ Granting the county clerk discretion to choose between two procedures, each lawful and each constitutionally sound, such choice to be determined on a cost-effective basis, does not make the section unconstitutional. The clerk is a public officer; we have no reason to believe that power of choice will be used incorrectly or illegally. The petition is based upon the allegation that the clerk did not follow the precise words of the statute, not upon any alleged abuse on the part of the clerk in the choice of procedure. Such decision-making is a legitimate function of the clerk's office; if an abuse of that function should occur, the clerk's actions may be challenged on that basis. No such challenge was made in this case.

The statutory scheme is constitutional on its face. The Legislature has provided two clear procedures to be followed, denying access to recall procedures to no one (see *Libertarian Party* v. *Eu* (1980) 28 Cal.3d 535, 543 [170 Cal.Rptr. 25, 620 P.2d 612]); in the interests of economy, the random sample has been selected by the Legislature as one method. The very purpose of saving money was thwarted in this case by respondent's ignoring the clearly stated terms of the section.

We see nothing to prevent the state from properly providing a procedure avoiding costly verification of signatures by individual examination in those cases where examination of a reliable sample shows that fewer than 90 percent, or more than 110 percent of the necessary signatures have been obtained. That such a procedure is statistically or economically infeasible of application to petitions for recall in small electoral jurisdictions does not prevent its constitutional application in this case.

Here, fewer than 90 percent of the number of valid names required were presented to the clerk. The process should have terminated at that point.

■ Real parties also assert that the relief sought by petitioner is barred by the affirmative defense of equitable estoppel because they relied, in filing early, on the clerk's representation that a supplemental filing period and an actual count would be available to them if the random sample showed signatures on the original petition to be insufficient. Respondent clerk joins in the claim that an estoppel lies and has attached to its pleadings both here and in superior court a copy of selected pages of a booklet, entitled "Procedure For Recalling State and Local Officials," issued by the office of the Secretary of State and fur-

nished by respondent to real parties, which contains the interpretation of the Secretary of State that supplementation is available under section 27215.

Petitioner in an unverified closing reply alleges that real parties' timing in filing the recall petition was not based upon reliance on assurances of the clerk, but rather upon a calculation of political impact after petitioner and the board voted on budgetary and personnel reductions. Assuming real parties' allegations of fact to be true, they attempt to apply estoppel in a novel fashion to bar relief sought by petitioner, a third party, who had no part in the clerk's conduct. The issue is not whether, as between the clerk and real parties, who allegedly relied upon respondent's advice, respondent should be prevented from reversing its position with regard to the proper procedure to be followed; respondent has not changed its position on the appropriate procedures. *Petitioner* should not be prevented, because of the *clerk's* conduct, from seeking to compel the clerk to comply with the terms of the law.

Neither respondent nor real parties cite any authority supporting application of an estoppel in these circumstances. The case of *Ricciardi* v. *County of Los Angeles* (1953) 115 Cal.App.2d 569, 578 [252 P.2d 773], cited by petitioner, although factually dissimilar, states the applicable rule: "Estoppel is an equitable doctrine. It will not be applied against one who is blameless."

Real parties also claim that mandate is an equitable proceeding (see Cal. Civil Writs, *op. cit.*, § 5.43, p. 94) and should not issue where its issuance would result in injustice and confusion; they urge that no substantial equities favor the granting of the writ, and it would frustrate the will of 12,956 voters who signed the petition. However, the policies favoring the right of recall do not mean that valid procedural requirements may be ignored (see *Dodge* v. *Free, supra*, 32 Cal.App.3d 436, 444); the same argument—disappointment of the expectations of the public—could be made whenever a statutory provision is overlooked or misconstrued.

We have concluded that respondent, having found the petition of real parties to be insufficient under the procedure set forth in section 27215, is precluded by the terms of the statute from taking further action on the petition and that no equitable considerations prevent the relief sought by petitioner.

Let a writ of mandate issue directing the respondent clerk to issue a certificate of insufficiency under section 27215, subdivision (d), and take no further action in processing an election to recall Wilcox on the basis of the petitions filed.

Franson, Acting P. J., and Woolpert (H. E.), J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.