[L.A. No. 31270. Dec. 18, 1980.]

LIBERTARIAN PARTY OF CALIFORNIA et al.,
Plaintiffs and Respondents, v.
MARCH FONG EU, as Secretary of State, etc.,
Defendant and Appellant.

536

COUNSEL

George Deukmejian, Attorney General, Richard D. Martland, Assistant Attorney General, Henry G. Ullerich and Christopher C. Foley, Deputy Attorneys General, for Defendant and Appellant.

Sills, Dougherty & Hendrickson and Ray Hendrickson for Plaintiffs and Respondents.

OPINION

**MANUEL, J.**—March Fong Eu, Secretary of State, appeals from a judgment of the Orange County Superior Court granting a peremptory writ of mandate commanding her and the Registrar of Voters of Orange and San Diego Counties to certify respondents David Bergland and Jim Gallagher on the November 7, 1978, general election ballot and place their names on the ballot with the political party designation "Libertarian." At issue is the constitutionality of section 10210 of the Elections Code insofar as it requires that persons qualifying for the ballot by the procedure of "independent nominations" be designated on the ballot as "Independent." We conclude hereafter that section 10210 does not violate the equal protection clause of either the United States Constitution or the California Constitution.

Respondent Libertarian Party of California is an unincorporated association of citizens and voters organized to elect candidates to public office. David Bergland, a candidate for the office of State Senator for the 36th Senatorial District, and Jim Gallagher, a candidate for the office of State Assemblyman for the 73d State Assembly District, were chosen for the respective offices by the Libertarian Party of Orange County and the Libertarian Party of California.

The Libertarian Party did not qualify to appear on the ballot for the 1978 general election. Bergland and Gallagher each qualified to have his name placed on the November 7, 1978, general election ballot pursuant to the "independent nomination procedure" set forth in section 6800 et seq. of the Elections Code.[1] Each candidate met the requirements of section 6831 by submitting nomination papers for the office sought, signed by voters in his district in excess of 3 percent of the entire number of registered voters in his district.[2]

---

[1]Unless otherwise specified, all statutory references hereafter are to the Elections Code.

[2]Section 6831 provides: "Nomination papers for a statewide office for which the candidate is to be nominated shall be signed by voters of the state equal to not less in number than 1 percent of the entire number of registered voters of the state at the time of the close of registration prior to the preceding general election. Nomination papers for an office, other than a statewide office, shall be signed by the voters of the area for which the candidate is to be nominated, not less in number than 3 percent of the entire number of registered voters in the area at the time of the close of registration prior to the preceding general election. Nomination papers for Representative in Congress, State Senator or Assemblyman, to be voted for at a special election to fill a vacancy, shall be signed by voters in the district not less in number than 500 or 1 percent of the

The nomination papers (petitions) circulated and submitted by each candidate contained a statement that "David Bergland [or Jim Gallagher] is registered as, and is a member of, the Libertarian Party of California. He has been nominated for this office by the Libertarian Party of California and seeks to have his name identified on the ballot as a Libertarian Party Candidate."

Bergland and Gallagher demanded that the Secretary of State certify their names on the November 7, 1978, election ballot as "Libertarian" rather than "Independent." Pursuant to section 10210, the Secretary of State refused, until ordered to do so by the Orange County Superior Court on September 6, 1978.[3] The trial court found that the candidates had qualified for the ballot pursuant to section 6831 and, despite section 10210, directed that they be designated "Libertarian" on the ballot.

■ Despite the final resolution of the issues as to the Libertarian Party and its candidates for the 1978 general election, the Secretary of State has appealed, seeking resolution of the important constitutional issue involved. It is urged that the validity of the system of candidate identification transcends the importance of the political race which gave rise to this dispute in 1978. We concur. "[I]f a pending case poses an issue of broad public interest that is likely to recur, the court may exercise an inherent discretion to resolve that issue even though an event occurring during its pendency would normally render the matter moot." (*In re William M.* (1970) 3 Cal.3d 16, 23 [89 Cal.Rptr. 33, 473 P.2d 737].) We have frequently exercised such discretion to resolve constitutional issues pertaining to election laws raised by candidates in

---

entire vote cast in the area at the preceding general election, whichever is less, nor more than 1,000."

[3]Section 10210 provides: "In the case of candidates for partisan office in a general election or in a special election to fill a vacancy in the office of Representative in Congress, State Senator, or Member of the Assembly, immediately to the right of and on the same line as the name of the candidate, or immediately below the name, if there is not sufficient space to the right of the name, there shall be printed in eight-point roman lowercase type the name of the qualified political party with which the candidate is affiliated.

"In the case of candidates for President and Vice President, the name of the party shall appear to the right of and equidistant from the pair of names of such candidates.

"If for a general election any candidate has received the nomination of any additional party or parties, the name(s) shall be printed to the right of the name of the candidate's own party. Party names of a candidate shall be separated by commas. If a candidate has qualified for the ballot by virtue of an independent nomination, the word 'Independent' shall be printed instead of the name of a political party in accordance with the above rules."

elections that were held before decision could be reached. (*Johnson* v. *Hamilton* (1975) 15 Cal.3d 461, 465 [125 Cal.Rptr. 129, 541 P.2d 881]; *Knoll* v. *Davidson* (1974) 12 Cal.3d 335, 344 [116 Cal.Rptr. 97, 525 P.2d 1273]; see also *Storer* v. *Brown* (1974) 415 U.S. 724, 737, fn. 8 [39 L.Ed.2d 714, 727, 94 S.Ct. 1274].) The designation of parties and candidates on the ballot is a matter of continuing public importance, and a challenge to the validity of a statute governing such designations demands final resolution to permit the orderly conduct of future elections.

Section 10210 provides that candidates of qualified political parties shall be listed on the ballot as candidates of their parties, but that "*If a candidate has qualified for the ballot by virtue of an independent nomination, the word 'Independent' shall be printed instead of the name of a political party*" beside his name on the ballot. (Italics added.)

The Libertarian Party contends that the denial of the rights of its candidates to be listed as candidates of the Libertarian Party denies equal protection and due process. Although it would have us focus solely on the code section here in question and make the determination of the equal protection issue within the narrow confines of that section, we find it imperative that the question be placed in the framework of the nomination and election processes of which it is but a part.

Article II of the California Constitution vests the Legislature with plenary power over the conduct of elections in this state. Section 3 of article II declares, "The Legislature shall define residence and provide for registration and free elections." Section 5 states, "The Legislature shall provide for primary elections for partisan offices . . . ." Pursuant to this grant of power, the Legislature determined that political parties should be recognized only on a statewide basis and defined "party" as a political organization that has "qualified for participation in any primary election."

The Legislature provided a specific procedure whereby any group of voters may organize a new political party and file a notice of intent to qualify it for such participation. (§§ 9951-9956.) In section 6430 it adopted two alternate methods by which that new party can become qualified. On or before the 135th day prior to the primary, the party can either (1) achieve a total voter registration in its name equal to 1 percent of the statewide vote at the last gubernatorial election (§ 6430,

subd. (b)),[4] or (2) file a petition of support signed by a number of voters equal to 10 percent of the statewide vote[5] at the last gubernatorial election (§ 6430, subd. (c)).[6]

A party that qualifies by either of these methods becomes subject to state regulation of its structure, powers, and duties (Elec. Code, div. 7), and the candidates it chooses at the primary election become its official nominees at the general election (§ 6610) and are identified by their party affiliation on the general election ballot (§ 10210, 1st par.).

The Legislature also recognizes that an individual may have significant public support and yet not be affiliated with a qualified party. To permit such persons to appear on the general election ballot, the Legislature has provided the special procedure of "independent nomination," i.e., nominations by petition. (Elec. Code, div. 6, ch. 6.)[7] If the person is seeking statewide office, his nomination papers must be signed by a number of voters equal to 1 percent of the voters registered for the last general election; if a local office, by a number equal to 3 percent of the voters registered in that area for the last general election. (§ 6831.)

---

[4]We are informed that the Libertarian Party qualified for the 1980 general election by raising its statewide registration to the 1 percent figure prescribed in this subdivision.

[5]The latter figure is higher because the persons signing such a petition need not actually register as members of the new party.

[6]Section 6430 provides in its entirety: "A party is qualified to participate in any primary election: (a) If at the last preceding gubernatorial election there was polled for any one of its candidates for any office voted on throughout the state, at least 2 percent of the entire vote of the state; or (b) If on or before the 135th day before any primary election, it appears to the Secretary of State, as a result of examining and totaling the statement of voters and their political affiliations transmitted to him by the county clerks, that voters equal in number to at least 1 percent of the entire vote of the state at the last preceding gubernatorial election have declared their intention to affiliate with that party; or (c) If on or before the 135th day before any primary election, there is filed with the Secretary of State a petition signed by voters, equal in number to at least 10 percent of the entire vote of the state at the last preceding gubernatorial election, declaring that they represent a proposed party, the name of which shall be stated in the petition, which proposed party those voters desire to have participate in that primary election. This petition shall be circulated, signed, verified and the signatures of the voters on it shall be certified to and transmitted to the Secretary of State by the county clerks substantially as provided for initiative petitions. Each page of the petition shall bear a caption in 18-point blackface type, which caption shall be the name of the proposed party followed by the words 'Petition to participate in the primary election.' No voters or organization of voters shall assume a party name or designation which is so similar to the name of an existing party as to mislead voters."

[7]Such persons may also run, of course, as write-in candidates. (Div. 6, ch. 8.)

Such papers must be filed with the Secretary of State not more than 129 days nor less than 64 days before the general election. (§ 6833.) If a candidate qualifies for a general election by means of such an "independent nomination," the word "Independent" is printed on the ballot after his name instead of a party designation. (§ 10210, 3d par.) It is this last provision that is challenged here.

■ The Libertarian Party contends that denying its candidates the right to be listed on the ballot as "Libertarian" constitutes an unconstitutional impairment of the fundamental rights to associate for political activity and to vote. We reject this contention, for we conclude that the identification provision imposes an insubstantial burden on the rights to associate and to vote and that the statute serves a compelling state interest to protect the integrity and stability of the electoral process in California.[8]

■ The United States Supreme Court has recognized that the electoral process involves two rights, different but overlapping—"the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." (*Williams* v. *Rhodes* (1968) 393 U.S. 23, 30 [21 L.Ed.2d 24, 31, 89 S.Ct.5].) In most instances, the court has found the rights "fundamental," and abrogation of the rights or any substantial restriction of the rights has been closely scrutinized to determine whether the state has a compelling interest in the regulation. (*Williams, supra.*) Thus in *Williams*, the court struck down an Ohio election law which, by regulating petition signature requirements, made it virtually impossible for a new political party to be placed on the ballot. The court noted that the state "failed to show any 'compelling interest' which justifies imposing such. heavy burdens on the right to vote and to associate." (*Id.*, p. 31 [21 L.Ed.2d p. 32].) In *Dunn* v. *Blumstein* (1972) 405 U.S. 330 [31 L.Ed.2d 274, 94 S.Ct. 995], the high court applied the "compelling state interest" test to invalidate Tennessee's one-year residence requirement for registration to vote. *Kramer* v. *Union School District* (1969) 395 U.S. 621 [23 L.Ed.2d 583, 89 S.Ct. 1886], involved a New York statute which denied the franchise in school district elections to persons who did not own or lease taxable real property. The court refused to find compelling the state's rationale that

---

[8]Accord: *Socialist Workers Party* v. *March Fong Eu* (9th Cir. 1978) 591 F.2d 1252, where the court applied the rational basis test to reach the same result.

the classification properly limited the franchise to those "interested in school affairs." In *Storer* v. *Brown, supra,* 415 U.S. 724, the court reiterated the compelling state interest test in upholding, under that test, a provision of our Elections Code that forbade ballot status to an independent candidate if he had a registered affiliation with a qualified political party within one year prior to the preceding primary election.

The *Storer* case put the earlier cases in proper perspective: "It has never been suggested that the *Williams-Kramer-Dunn* rule automatically invalidates every substantial restriction on the right to vote or to associate." (*Id.,* at p. 729 [39 L.Ed.2d at p. 723].) A myriad of state laws regulate "in most substantial ways" the time, place, and manner of elections, the registration of voters, and the qualification of candidates; few would fail to pass constitutional muster. (*Storer, supra,* at p. 730 [39 L.Ed.2d at p. 723].) The Supreme Court has seldom addressed the degree to which a particular regulation affects the right to vote or to associate. In most cases the court has been faced with restrictions that deny a party or candidate access to the ballot altogether (*American Party of Texas* v. *White* (1974) 415 U.S. 767 [39 L.Ed.2d 744, 94 S.Ct. 1296]; *Storer* v. *Brown, supra,* 415 U.S. 724; *Bullock* v. *Carter* (1972) 405 U.S. 134 [31 L.Ed.2d 92, 92 S.Ct. 849]; *Williams* v. *Rhodes, supra,* 393 U.S. 23) or deny the franchise itself (*Dunn* v. *Blumstein, supra,* 405 U.S. 330; *Kramer* v. *Union School District, supra,* 395 U.S. 621).

Determination of the constitutional issue we address here involves consideration of the facts and circumstances behind the law, and the interests, respectively, of the state and of those who are allegedly disadvantaged by the classification (*Storer, supra,* 415 U.S., at p. 730 [39 L.Ed.2d at p. 723]), a process in which this court "must examine the character of the classification in question, the importance of the individual interests at stake, and the state interests asserted in support of the classification." (*Illinois Elections Bd.* v. *Socialist Workers Party* (1979) 440 U.S. 173 [59 L.Ed.2d 230, 99 S.Ct. 983]; accord: *Johnson* v. *Hamilton, supra,* 15 Cal.3d 461, 469-471; *Libertarian Party* v. *Eu* (1978) 83 Cal.App.3d 470 [147 Cal.Rptr. 888].)

▇ Section 10210 denies access to the ballot to no one. It merely provides for a ballot designation, *party* affiliation. The designation informs the voter of the manner in which ballot access was accomplished, i.e., by primary in the case of nominees of qualified political parties or, in the case of all others, by the independent nomination process. In so

doing, the statute necessarily accords different treatment to candidates depending on whether the party which chose them is qualified or not. The question then is whether the Legislature had an adequate basis for determining that only candidates of qualified parties could claim party affiliation on the ballot.

We note at the outset that it is not inaccurate to describe candidates who qualify for the ballot by the independent nomination method as independents, for such candidates *are* independent of the qualified political parties. "In California, the independent candidacy route to obtaining ballot position is but a part of the candidate-nominating process, an alternative to being nominated in one of the direct party primaries." (*Storer* v. *Brown, supra*, 415 U.S. 724, 733 [39 L.Ed.2d 714, 725].) Although the candidates may be affiliated with a political group, the candidate cannot be said to be the candidate of that group, first because only qualified parties have been granted the right by the Legislature to nominate candidates for the ballot, and secondly, because the signatures on independent nomination petitions may be obtained from any registered voter without regard to party affiliation.

It is argued that the First Amendment requires that all candidates be permitted to provide information to the electorate via the ballot and that section 10210 discriminates against unqualified political parties in that regard. Libertarian Party concedes as it must, however, that none of the informational designations is constitutionally compelled.[9] The purpose of section 10210 is not to educate voters as to anything except the candidate's political party affiliation as that term is defined by the Legislature for the electoral process enacted for the state of California, a process which the Libertarian Party concedes is constitutional. Until a political body or group is qualified pursuant to the procedures and regulations provided by the Legislature, it is not a *party* whose access to the ballot is secured under the provisions for nomination of qualified party candidates, and it would be misleading to designate the candidate of that political group as a political *party* candidate on the ballot.

---

[9]Furthermore, it is principally section 10211, not 10210, which prescribes the information to be disseminated by ballot designations. That section provides that immediately under the name of the candidate may appear, at the option of the candidate, any *one* of the following designations: (1) elective office held by candidate or to which appointed; (2) the word "incumbent"; (3) no more than three words stating profession, vocation, or occupation; or (4) the words "appointed incumbent." The section expressly precludes use of a designation which "uses the name of any political party,

■ The Libertarian Party is interested, of course, in gaining as much exposure as possible for its candidates. There is no question that the designation of party beside the name of the qualified party candidate gives information to voters which is not given as to candidates of the nonqualified parties. That distinction, however, is implicit in and essential to an electoral system that places minimum qualifications upon parties to achieve qualified status.[10] Thus, if each independent candidate could decide for himself what nonqualified party he should be listed as affiliated with, the significance of qualified party affiliation would be masked. The legislative purpose in giving substance to party affiliation by limiting party ballot designation to qualified parties would be destroyed. It is settled, however, that the requirements a party must meet to be qualified are constitutional and they are not challenged here. Against the compelling state interest in its distinction between qualified and nonqualified parties, we must now balance the deprivation of a nonqualified party's right to have its candidates designated on the ballot as such.

The Libertarian Party is in no way restricted in its associational activities or in its publication of the affiliation of its candidates. It is only proscribed, so long as it remains unqualified, from designating the affiliation on the ballot. That burden on the associational rights of the persons concerned or the voting rights of the citizenry is clearly insubstantial when weighed against the compelling interest in maintaining the classification set out in section 10210.

■ It is settled that a state has a compelling interest in regulating the *method* by which parties appear on the ballot. (See, e.g., *American Party of Texas* v. *White, supra,* 415 U.S. 767, 781-788 [39 L.Ed.2d

---

whether or not it has qualified for the ballot." The validity of section 10211 is not before us.

[10]Libertarian Party cites *Murphy* v. *Curry* (1902) 137 Cal. 479 [70 P. 461], as authority for requiring the state to provide information with regard to all parties in like manner. The case is inapposite. In *Murphy* a congressional candidate received the nomination of two qualified parties. At the time, a statute (Pol. Code, § 1197) provided that a candidate's name could be printed only once on the ballot and required that a candidate nominated by more than one party choose which of such party designations he desired to have his name printed under. This court declared the statute unconstitutional. *Murphy* stands for the proposition that a qualified political party has the right to nominate whomever it sees fit as a candidate and that the nominee has the right to have his name placed on the ballot as the nominee of that party. The problem addressed in *Murphy* is now covered by section 10210: "...If for a general election any candidate has received the nomination of any additional party or parties, the name(s) shall be printed to the right of the name of the candidate's own party...."

744, 760-764]; *Jenness* v. *Fortson* (1971) 403 U.S. 431 [29 L.Ed.2d 554, 91 S.Ct. 1970]; *Christian Nationalist Party* v. *Jordan* (1957) 49 Cal.2d 448, 453 [318 P.2d 473, 70 A.L.R.2d 1153], and cases cited.) As the United States Supreme Court explained in *Jenness*, "There is surely an important state interest in requiring some preliminary showing of a significant modicum of support *before printing the name of a political organization's candidate on the ballot*—the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election." (Italics added; 403 U.S. at p. 442 [29 L.Ed.2d at pp. 562-563].)

Here the state has achieved that goal by providing, in section 6430, not one but two ways for a new party to appear on the ballot. It would wholly subvert that objective if nonqualified parties could achieve ballot status simply by having their candidates add a wholly unauthorized party designation to their independent nomination papers.[11] It was by just this device, however, that the Libertarian Party sought to appear qualified when it was not.

■ The maintenance of the integrity of the distinction between qualified and nonqualified parties serves a compelling state interest and the restriction of party designation on the ballot set forth in section 10210 furthers that interest without substantially impairing the rights of political association and voting. Accordingly, the statute is constitutional.

The reasoning of the United States Supreme Court in upholding another provision of our Elections Code is equally applicable here: "It appears obvious to us that the one-year disaffiliation provision furthers the State's interest in the stability of its political system. We also consider that interest as not only permissible, but compelling and as outweighing the interest the candidate and his supporters may have in making a late rather than an early decision to seek independent ballot status. . . . As we indicated in *Rosario*, the Constitution does not require the State to choose ineffectual means to achieve its aims. To conclude otherwise might sacrifice the political stability of the system of the

---

[11]Section 6838 carefully prescribes the exact contents of an independent nomination paper; the nominee is to be identified by his name and the office for which he is a candidate, and the voter signing the paper must make a number of mandatory allegations. Thus, he must state the county in which he is registered; give the name, address, and proposed elective office of the nominee; and affirm that he has not "signed the nomination paper of any other candidate for the same office."

State, with profound consequences for the entire citizenry, merely in the interest of particular candidates and their supporters having instantaneous access to the ballot." (*Storer* v. *Brown, supra*, 415 U.S. at p. 736 [39 L.Ed.2d at p. 727].)

The judgment is reversed.

Bird, C. J., Tobriner, J., Mosk, J., Clark, J., Richardson, J., and Newman, J., concurred.