**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| MICHAEL CHAMNESS; DANIEL FREDERICK; RICH WILSON, *Plaintiffs-Appellants*, | No. 11-56303 |
| and | D.C. No. 2:11-cv-01479-ODW-FFM |
| JULIUS GALACKI, *Intervenor-Appellant*, | |
| v. | |
| DEBRA BOWEN, in only her official capacity as California Secretary of State; DEAN LOGAN, in only his official capacity as Registrar-Recorder, County Clerk of the County of Los Angeles, *Defendants-Appellees*, | |
| ABEL MALDONADO; CALIFORNIA INDEPENDENT VOTER PROJECT; CALIFORNIANS TO DEFEND THE OPEN PRIMARY, *Intervenor-Defendants-Appellees*. | |

MICHAEL CHAMNESS; DANIEL
FREDERICK; RICH WILSON,
             *Plaintiffs-Appellants*,

                  v.

DEBRA BOWEN, in only her official
capacity as California Secretary of
State; DEAN LOGAN, in only his
official capacity as Registrar-
Recorder, County Clerk of the
County of Los Angeles,
             *Defendants-Appellees*,

CALIFORNIA INDEPENDENT VOTER
PROJECT; CALIFORNIANS TO DEFEND
THE OPEN PRIMARY; ABEL
MALDONADO,
    *Intervenor-Defendants-Appellees*.

No. 11-56449

D.C. No.
2:11-cv-01479-
ODW-FFM

OPINION

Appeal from the United States District Court
for the Central District of California
Otis D. Wright, District Judge, Presiding

Argued and Submitted
February 13, 2013—Pasadena, California

Filed July 3, 2013

Before: Marsha S. Berzon and Paul J. Watford, Circuit Judges, and James G. Carr, Senior District Judge.[*]

Opinion by Judge Carr

---

## SUMMARY[**]

---

### Civil Rights

The panel affirmed the district court's order granting defendants summary judgment and denying a motion to intervene in this action brought by plaintiffs challenging the constitutionality of certain sections of California Senate Bill 6, legislation which, implementing California's Proposition 14, changed the California election system by eliminating party primaries and general elections with party-nominated candidates, and substituting a nonpartisan primary and a two-candidate runoff.

The panel first dismissed as moot the appeal by two of the plaintiffs and the claims of a potential intervenor which challenged the counting of write-in ballots, noting that the California Elections Code has been amended to clarify that voters are not permitted to cast write-in ballots in top-two general elections.

---

[*] The Honorable James G. Carr, Senior District Judge for the U.S. District Court for the Northern District of Ohio, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel then rejected the claim brought by the third plaintiff alleging that his First Amendment rights had been violated because in the special congressional primary election in which he wished to participate, he was prohibited from using the ballot label "Independent" and was instead forced to choose between a preferred party designation, "No Party Preference," or a blank space on that part of the ballot. The panel held that plaintiff failed to establish that SB 6 severely burdened his rights, noting that plaintiff failed to present any evidence to support his claim that there was a difference between "Independent" and "No Party Preference." The panel held that the law in this case represented a reasonable, nondiscriminatory restriction that imposed a slight burden on speech and was sufficiently supported by the state's important regulatory interests.

The panel held that the district court did not abuse its discretion in denying the motion to intervene by Julius Galacki, who attempted to run as a write-in candidate in a July 12, 2011, general election for a congressional district. The panel noted that Galacki knew of the law he wished to challenge, and the effects it would have, well before the time he filed his motion and therefore the district court acted within its discretion in denying the motion as untimely.

## COUNSEL

Gautam Dutta (argued), Fremont, California, for Plaintiffs-Appellants and for Intervenor-Defendant-Appellant Julius Galacki.

George Waters (argued), Deputy Attorney General, Kamala D. Harris, Attorney General of California, Douglas J. Woods, Senior Assistant Attorney General, and Peter A. Krause, Supervising Deputy Attorney General, Sacramento California, for Defendant-Appellees Debra Bowen and Dean Logan.

Christopher E. Skinnell (argued), Marguerite Mary Leoni, Nielsen Merksamer Parrinello Gross & Leoni LLP, San Rafael, California, for Intervenor-Defendants-Appellees.

---

## OPINION

CARR, Senior District Judge:

This is a consolidated appeal in which plaintiffs-appellants Michael Chamness, Daniel Frederick, and Rich Wilson challenge the constitutionality of certain sections of California Senate Bill 6 (SB 6), legislation which, implementing California's Proposition 14 (Prop. 14), fundamentally changes the California election system by eliminating party primaries and general elections with party-nominated candidates, and substituting a nonpartisan primary and a two-candidate runoff. Appellant Julius Galacki moved to intervene in the lawsuit, but the trial court denied his motion.

## I. Factual Background

Before California voters approved Prop. 14 and the California Legislature enacted SB 6, California operated under a partisan primary election system. Under that system, each qualified party held a primary election in June, and the

winner became the party's nominee in the November general election. Independent candidates did not participate in the primary elections but were nominated to the general election ballot by voter petition.

Prop. 14 amended the California Constitution to establish a "top-two" open primary election system under which voters directly nominate two candidates. The top two vote-receiving candidates become the general election candidates regardless of political party affiliation or lack thereof. To implement Prop. 14, the California Legislature enacted SB 6. Together, Prop. 14 and SB 6 drastically changed elections in California.

Under the version of SB 6 in place at the time relevant to this case, in the primary election candidates on the primary ballot indicated either their political party preference, as disclosed on the candidate's most recent statement of registration, or that they had "No Party Preference," or designated that preference spot on the ballot be left blank. Cal. Elec. Code § 13105(a).

As Secretary of State, defendant Debra Bowen interpreted the term "political party" in this section to mean only a "qualified party" under Cal. Elec. Code § 5100. That section imposes certain requirements before a group may become a "qualified party."[1] Thus, a candidate may only list his party

---

[1] A party is qualified to participate in any primary election under any of the following conditions:

> (a) If at the last preceding gubernatorial election there was polled for any one of its candidates for any office voted on throughout the state, at least 2 percent of the entire vote of the state.

preference on the primary ballot if that party has taken the statutory steps to become a "qualified party." At the time of the disputed election, there were six qualified parties in California: American Independent, Democratic, Green, Libertarian, Peace and Freedom, and Republican. Bowen concluded that a candidate who prefers a "non-qualified" party could not state the term "Independent" on the ballot. Rather, the candidate had to either state he has "No Party Preference," or leave the space blank.

---

(b) If on or before the 135th day before any primary election, it appears to the Secretary of State, as a result of examining and totaling the statement of voters and their political affiliations transmitted to him or her by the county elections officials, that voters equal in number to at least 1 percent of the entire vote of the state at the last preceding gubernatorial election have declared their intention to affiliate with that party.

(c) If on or before the 135th day before any primary election, there is filed with the Secretary of State a petition signed by voters, equal in number to at least 10 percent of the entire vote of the state at the last preceding gubernatorial election, declaring that they represent a proposed party, the name of which shall be stated in the petition, which proposed party those voters desire to have participate in that primary election. This petition shall be circulated, signed, verified and the signatures of the voters on it shall be certified to and transmitted to the Secretary of State by the county elections officials substantially as provided for initiative petitions. Each page of the petition shall bear a caption in 18-point boldface type, which caption shall be the name of the proposed party followed by the words "Petition to participate in the primary election."

Cal. Elec. Code § 5100.

SB 6 also prohibits voters from casting write-in votes in the general election. However, voters may cast write-in votes in the primary election. Cal. Elec. Code § 8605 further states:

> No person whose name has been written in upon a ballot for an office at the direct primary may have his or her name placed on the ballot as a candidate for that office for the ensuing general election unless one of the following is applicable:
>
> ***
>
> (c) At that direct primary he or she received . . . the highest number of votes cast for that office or the second highest number of votes cast for that office . . . .

Because only the two candidates with the highest number of votes in the primary election advance to the general election, "[a] person whose name has been written on the ballot as a write-in candidate at the general election for a voter-nominated office shall not be counted." Cal. Elec. Code § 8606 (2011). Bowen interpreted this statute to prohibit all write-in candidates from running in the general election.

Chamness sought to run for office in the primary election and wished to have the ballot state, in the party preference space, "Independent."[2] Instead, he appeared on the ballot as:

---

[2] As in his complaint, Chamness argues on appeal only that he wished to designate himself "Independent" on the primary election ballot, not that he must be allowed to identify himself as a member of the "Coffee Party."

MICHAEL CHAMNESS
No Party Preference
Non-Profit Organization Consultant

Frederick sought to run as a write-in candidate in the general election for Assembly District 4, but under SB 6 could not do so. Wilson, who is registered to vote in Assembly District 4, cast a write-in vote for Frederick in the election. Election officials did not count Wilson's vote for Frederick.

Galacki attempted to run as a write-in candidate in the July 12, 2011, general election for Congressional District 36. He was not permitted to do so. When Galacki sought write-in registration papers, Los Angeles County Registrar Dean Logan explained to Galacki that SB 6 bans write-in candidacies in the general election. Galacki thereafter attempted to cast a write-in vote for himself in the general election by mailing his ballot to Logan's office. Logan did not count the vote.

Chamness filed suit on February 17, 2011, seeking a preliminary injunction to enjoin the implementation of SB 6 in the special congressional election in which he wished to participate.

On March 1, 2011, intervenors-defendants, Abel Maldonado, California Independent Voter Project (CIVP), and Californians to Defend the Open Primary (CDOP), filed a motion to intervene. The trial court granted the motion.

On March 30, 2011, the trial court denied Chamness' motion for a preliminary injunction. Chamness filed a

motion for an expedited appeal, which this court denied. Chamness thereafter voluntarily dismissed that appeal.

On May 6, 2011, plaintiffs filed a motion for summary judgment. On July 12, 2011, the general election occurred. Frederick was not on the ballot, and Wilson's vote for Frederick was not counted. Galacki did not appear on the ballot, and his vote for himself was not counted.

On July 14, 2011, the trial court denied Chamness' motion for summary judgment, and *sua sponte* tentatively granted defendants summary judgment. Also on July 14, 2011, Galacki filed a motion to intervene. In his motion, he alleged SB 6 violated his First and Fourteenth Amendment rights by barring him from running as a write-in candidate. He also stated it violated his rights under the Elections Clause by prohibiting Logan from counting Galacki's write-in vote for himself. Finally, he alleged SB 6 impermissibly forced him to state that he has "No Party Preference," when, in fact, he wished to run as a Tea Party Candidate.

Galacki also stated he would assert two unique Elections Clause claims: first, his right to run for federal office as a write-in candidate; second, his right to cast a ballot as a write-in candidate and have it counted. Galacki stated that "[b]ecause [he] is entitled to intervene, the Court may incorporate by reference his as-applied constitutional claims (stemming from the July 12, 2011 General Election) into Plaintiffs' pending Motion for Summary Judgment."

The trial court denied Galacki's motion to intervene for two reasons. First, it stated Galacki failed timely to file the motion; and second, it stated that plaintiffs would adequately represent Galacki's rights.

On August 23, 2011, the trial court formally granted defendants summary judgment. Chamness, Frederick, and Wilson appeal the trial court's order granting defendants summary judgment (Case No. 11-56449). Galacki appeals the trial court's order denying his motion to intervene (Case No. 11-56303).

## II. Jurisdiction and Mootness

This court has jurisdiction over this appeal as it arises from the trial court's final orders granting summary judgment to defendants and denying Galacki's motion to intervene. 28 U.S.C. § 1291; *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 896 (9th Cir. 2011) (this court has "jurisdiction over the denial of a motion to intervene as of right as a final appealable order . . ."); *Rubin v. City of Santa Monica*, 308 F.3d 1008, 1013 (9th Cir. 2002).

Chamness' case is not moot because his claims are "'capable of repetition, yet evading review.'" *Rubin*, 308 F.3d 1013 (quoting *Shaefer v. Townsend*, 215 F.3d 1031, 1033 (9th Cir. 2000)). Chamness' claim is capable of repetition because future election administrators would deny him the ability to use the designation "Independent" on the primary ballot. *See id*. As this court has previously noted, "[i]f [election law] cases were rendered moot by the occurrence of an election, many constitutionally suspect laws . . . could never reach appellate review." *Id*. (internal quotation marks omitted) (alterations in original). We therefore exercise jurisdiction over this appeal. *See id.*

Frederick's and Wilson's appeal is, however, moot. They base their appeal on the proposition that California law impermissibly allows voters to cast write-in votes in top-two

general elections, but then prohibits those ballots from being counted. Whether or not that was so at the time the district court decided the case, *see Field v. Bowen*, 199 Cal. App. 4th 346, 350 (2011), it is not so now.

California's Elections Code has been amended to clarify that voters are *not* permitted to cast write-in ballots in top-two general elections. *See* Cal. Elec. Code § 8606 (2012) ("Notwithstanding any other provision of law, a person may not be a write-in candidate at the general election for a voter-nominated office"); *id.* § 15340 ("*Except for a voter-nominated office at a general election*, each voter is entitled to write on the ballot the name of any candidate for any public office, including that of President and Vice President of the United States." (emphasis added)). Plaintiffs concede that the state may prohibit write-in votes from being cast in a general election. *See Burdick v. Takushi*, 504 U.S. 428, 441–42 (1992).

Because Frederick and Wilson seek only declaratory relief affecting future elections, their appeal is moot.[3] *See Renee v. Duncan*, 686 F.3d 1002, 1016 (9th Cir. 2012). For the same reason, Galacki's claims regarding *his* write-in candidacy and the vote he cast for himself in the general election are moot.

---

[3] That is, they do not claim Frederick would have won the election, nor do they seek a change in the outcome of the election.

## III.  Discussion of the Issues

### A.  Case No. 11-56449

Chamness argues the state violated his First Amendment rights by prohibiting him from using the ballot label "Independent" and forcing him to choose between a preferred party designation, "No Party Preference," or a blank space on that part of the ballot.[4]  We hold that Chamness has failed to establish that SB 6 severely burdened his rights, and uphold the constitutionality of the statute as reasonably related to furthering the state's important interest in efficiently regulating elections.

This court reviews the constitutionality of a statute *de novo*.  *Rubin*, 308 F.3d at 1008.

"Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections."  *Dudum v. Arntz*, 640 F.3d 1098, 1103 (9th Cir. 2011) (quoting *Burdick*, 504 U.S. at 433).  Any

---

[4] The statute no longer provides that "[i]f the candidate chooses not to have his or her party preference listed on the ballot, the space that would be filled with a party preference designation shall be left blank."  Cal. Elec. Code § 13105(a) (2011).  Six months after the district court entered judgment in this case, California amended its Elections Code to remove the blank space option, requiring candidates to either designate a "Party Preference" or state "Party Preference: None."  Cal. Elec. Code § 13105(a) (2012).  Because Chamness challenges only his inability to identify himself as an "Independent," and does not argue in his appellate briefs that the presence or absence of the blank space option has any effect on the statute's constitutionality, we express no view as to whether the removal of the blank space option compels speech by requiring candidates who prefer a non-qualified party to falsely state that they have no party preference.

"election system, 'whether it governs the registration and qualifications of voters, the selection and eligibility of candidates, or the voting process itself, inevitably affects—at least to some degree—the individual's right to vote.'" *Id*. at 1106 (quoting *Burdick*, 504 U.S. at 433). Therefore, "the Supreme Court developed a balancing test to resolve the tension between a candidate's First Amendment rights and the state's interest in preserving the fairness and integrity of the voting process." *Rubin*, 308 F.3d at 1014. This court reiterated the appropriate test:

> When deciding whether a state election law violates First and Fourteenth Amendment speech rights, courts are to "weigh the character and magnitude of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary."

*Id.* (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997)).

When an election regulation imposes a "severe [] burden[]" on First Amendment rights, the state must show the law is narrowly tailored to achieve a compelling governmental interest—strict scrutiny review. *Id.* (quoting *Burdick*, 504 U.S. at 434). Nondiscriminatory restrictions that impose a lesser burden on speech rights need only be reasonably related to achieving the state's "'important regulatory interests.'" *Id*. (quoting *Burdick*, 504 U.S. at 434). This court has noted that "voting regulations are rarely subject to strict scrutiny." *Dudum*, 640 F.3d at 1106 (citing *Lemons v. Bradbury*, 538 F.3d 1098, 1104 (9th Cir. 2008)).

A regulation imposes a severe speech restriction if it "significantly impair[s] access to the ballot, stifle[s] core political speech, or dictate[s] electoral outcomes." *Rubin*, 308 F.3d at 1015. A regulation imposes a permissible restriction on speech when it is "generally applicable, even-handed, [and] politically neutral," or if it "protects the reliability and integrity of the election process." *Id.* at 1014 (citing *Hussey v. City of Portland*, 64 F.3d 1260, 1265 (9th Cir. 1995)). "This is true even when the regulations 'have the effect of channeling expressive activities at the polls.'" *Id.* (quoting *Timmons*, 520 U.S. at 369).

In *Timmons*, the Supreme Court upheld a law banning a candidate from appearing on the ballot with more than one political party designation. 520 U.S. at 369–70. The Court held the burden imposed was a minor one, *id.* at 359, and therefore rejected the political "party's contention that it has a right to use the ballot itself to send a particularized message . . . to the voters[] about the nature of its support for the candidate. Ballots serve primarily to elect candidates, not as forums for political expression." *Id.* at 363.

The Court held the state had a "strong interest in the stability of [its] political system[]." *Id.* at 366. Although such an interest does not allow the state to insulate political parties from minor parties' or independent competition, the "interest permits them to enact reasonable election regulations that may, in practice, favor the traditional two-party system." *Id.* at 367. The Court thus concluded that "the burdens [the law] impose[d] on [the party's] associational rights are justified by 'correspondingly weighty' valid state interests in ballot integrity and political stability." *Id.* at 369–70.

In *Rubin*, applying the *Timmons* analysis, this court held that a city could preclude a candidate from designating on the ballot, as his occupation, that he was a "peace activist." 308 F.3d at 1015–17. The law prohibited any candidate from naming a "status" as his occupation. *Id*. This court held that the city's "prohibition of status designations such as 'activist' does not severely burden a candidate's First Amendment rights." *Id*. The court noted the regulation is viewpoint neutral—it bans any type of "status" regardless of the message it seeks to convey. *Id*. Additionally, it did not hinder core political speech by preventing the candidate from "supporting or discussing" peace activism during his candidacy; it merely placed a limit on how his occupation would appear on the ballot. *Id*. Finally, the city provided him an alternative way to express his views through a candidate's statement distributed prior to the election. *Id*. at 1016. Under all of the circumstances, the law did not severely burden the candidate's speech rights. *Id*.

Chamness has likewise failed to show that the statute challenged in this case severely burdened his First Amendment rights. Chamness seeks to use the ballot to promote his political message. However, unlike the candidate in *Timmons*, Chamness cannot identify the specific message he wishes to convey or explain how that message is hindered. The law prohibits Chamness from designating himself as "Independent," and requires him to state he has "No Party Preference." Yet, Chamness has failed to demonstrate any real difference between the two locutions.

The only possible difference between the two phrases that has been suggested is that "Independent" may evoke a positive view—that the candidate affirmatively rejects the politics of the other parties. "No Party Preference" might, on

the other hand, evoke a neutral or even negative view—that the candidate is apathetic to the views of the other parties; *i.e.*, while he does not identify with them, he does not reject them.  Chamness, however, failed to provide any evidence that the two phrases are actually likely to be understood by voters to convey these different meanings, and, if they do, that the distinction would tend to affect the way voters cast their votes.  Considered in context, we cannot assume these facts in the absence of evidence.  To the contrary, we assume the ballot was presented to a well-informed electorate, familiar with the qualified political parties it has seen on past ballots.  *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 454–55 (2008).  Moreover, had Chamness believed that "No Party Preference" had negative connotations even to well-informed voters, he could have requested that his name appear next to a blank space, which was permitted under the version of SB 6 in effect during Chamness' candidacy.

The fact that the regulation in this case is viewpoint neutral as to the required term "No Party Preference" supports the conclusion that it imposes only a slight burden on speech.  *See Rubin*, 308 F.3d at 1015.  The restriction does not allow *any* candidates to term themselves "Independents" and does allow *all* candidates to put themselves forward on the primary ballot and gather votes.  That candidates not identified on the ballot as preferring a particular party must use the term "No Party Preference" or leave the space blank rather than designating themselves as an "Independent" has no viewpoint implications, and so, for that reason as well, imposes a "[l]esser burden[]" on speech.

Such slight speech burdens may be justified by the "State's 'important regulatory interests,'" *Timmons*, 520 U.S.

at 358 (quoting *Burdick*, 504 U.S. at 434), including "prevent[ing] misrepresentation and electoral confusion," *Norman v. Reed*, 502 U.S. 279, 290 (1992). Here, there is such an interest in preventing confusion. The term "Independent," if listed next to a candidate's name on a ballot, might be confused with the name of a political party, such as the "American Independent" party—one of California's "qualified" political parties.[5]

The state also has an important interest in managing its ballots. *Timmons*, 520 U.S. at 365. If the state were to allow Chamness to use the term "Independent," various candidates could then seek to place other designations on the ballot in

---

[5] Although defendants asserted an "interest in maintaining the distinction between qualified political parties and nonqualified political bodies" as justifying the "No Party Preference" language, we do not rely on that distinction in our analysis. The California Supreme Court's decision in *Libertarian Party v. Eu*, 28 Cal.3d 535, 546 (1980), on which Defendants rely for their assertion, held that "the distinction between qualified and nonqualified parties serves a compelling state interest," but did so largely in reliance on conditions that no longer obtain—namely, the use of party primaries conducted by the state, in which only one endorsed candidate per party could appear on the final ballot. *See Libertarian Party*, 28 Cal. 3d at 545–46. Under the current system, in contrast, political parties do not choose candidates; the state does not run separate primaries for various parties; and multiple candidates can state that they prefer the same party. Given the substantial changes from the election system at issue in *Libertarian Party* to the present one, the analysis in that case of the governmental interests supporting the "qualified parties" distinction is not fully transferable to the present context.

In any event, Chamness does not contend that "Independent" is a political party, nor does he challenge California's limitation of appearances on the ballot to "qualified" parties. *See supra* note 2. We therefore express no views as to the validity of California's restriction against stating preferences for non-qualified parties.

lieu of a party preference. Those self-designations might, for example, indicate specific political ideologies, or the absence thereof. *Id.* (stating examples such as the "No New Taxes" or "Stop Crime Now" parties). Or candidates could propose designations containing language or messages inappropriate for ballots, such as those containing profanity or promoting racism or sexism. Limiting the ballot designations to political parties, a prescribed term ("No Party Preference"), or a blank space avoids both the problem of allowing questionable self-designation and the alternative prospect of having to make case-by-case governmental decisions regarding the acceptability of various self-designations.

We therefore hold that the law in this case represents a reasonable, nondiscriminatory restriction that imposes a slight burden on speech and is sufficiently supported by the state's important regulatory interests.

In arguing for strict-scrutiny review, Chamness relies heavily on *Rosen v. Brown*, 970 F.2d 169 (6th Cir. 1992). In *Rosen*, the Sixth Circuit invalidated an Ohio law that allowed Democratic and Republican candidates to state their party on the ballot, but prohibited the political party designation "Independent." Ohio uses an election system similar in all relevant aspects to the *former* California system. *Id.* at 171–72, 174. Rosen was not affiliated with a political party, and secured a place on the general election ballot by petition. *Id*. at 171–72. The Ohio Secretary of State refused to allow Rosen to designate himself as "Independent" on the ballot, in compliance with an Ohio statute. *Id*. While the other candidates would have either "Democrat" or "Republican" next to their names, Rosen would have no designation by his. *Id*.

The district court issued a preliminary injunction requiring that Rosen be identified as "Independent by Petition" on the ballot. *Id.* The district court later granted summary judgment to Rosen on the merits of his claim, and the Sixth Circuit affirmed. *Id*. at 172.

The Sixth Circuit noted that Rosen provided ample evidence that the distinction between the label "Independent" and no label at all severely prejudiced him at the polls. *Id*. at 173–74. One expert testified:

> [P]arty identification is the single most important influence on political opinions and voting. . . . Without a designation next to an Independent's name on the ballot, the voter has no clue as to what the candidate stands for. Thus, the state affords a crucial advantage to party candidates by allowing them to use a designation, while denying the Independent the crucial opportunity to communicate a designation of their candidacy.

*Id.* at 172.

Another expert stated:

> Independents compose an increasingly large segment of the electorate, with approximately 34 percent of eligible voters identifying themselves as Independents. . . . Independent candidates are handicapped by their inability to communicate a political designation on the ballot. . . . Many voters do not know who the candidates are or who they will vote for until

> they enter the voting booth. Without labels,
> voters cannot identify the nonparty candidates
> or know what they represent.

*Id.*

The final expert stated "that Ohio's ballot scheme is the equivalent of putting an unlabeled product on a shelf next to brand name products in a supermarket. Similarly, the absence of a label for a candidate gives rise to mistrust and negative inferences." *Id.* at 172–73.

The Sixth Circuit struck down the Ohio law as an unconstitutional restriction on independent candidates' First Amendment rights. *Id.* at 178. The court noted Rosen presented evidence that the designation hindered his rights, and the defendants failed to rebut that evidence. *Id*. at 176. The court rejected the state's asserted interest, finding, citing Ohio's history of impermissible ballot statutes, that the Ohio statute "is nothing more than a deliberate attempt by the State to protect and guarantee the success of the Democratic and Republican parties." *Id*. at 176. The court also rejected the state interest in "producing a more manageable ballot" as "not substantiated by the facts of this case." *Id*. at 177. "By excluding such designations from the ballot, Ohio will not produce a shorter or smaller ballot." *Id.*

*Rosen* is not in conflict with our holding in this case, for two reasons. First, as discussed above, Chamness failed to present in the district court any evidence to support his claim that there is a difference between "Independent" and "No Party Preference." Nor are the facts of this case sufficiently similar to those in *Rosen* to allow Chamness to rely on the studies presented in that case. That case involved the

distinction, supported by expert testimony establishing its prejudicial impact, between "Independent" and no designation at all, when pitted against "Republican" or "Democrat." By contrast, this case involves an asserted, but unsupported, distinction in likely impact between "Independent" on the one hand, and "No Party Preference," when pitted against other "preference" designations for California's six qualified parties.

The *Rosen* court also stated that the law in that case seemed to be "nothing more than a deliberate attempt by the State to protect and guarantee the success of the Democratic and Republican parties." 970 F.2d at 176. There does not appear to be any legitimate argument that the law in this case seeks to insulate any political party or parties from competition. Indeed, the law does not even allow a political party to affirmatively endorse a candidate on the ballot or allow a candidate to affirmatively state that a political party endorses him; rather, he may only state that he prefers a party. In other words, unlike the Ohio statute in *Rosen*, the California open primary system permits *no* "brand names," as the references to political parties are only individual candidates' preferences, not endorsements by political parties indicating that the party has reviewed a candidate's qualifications or positions.

Additionally, under the California system, multiple candidates may state they prefer the same political party, weakening any argument that the law seeks to guarantee the success of certain political parties. To the contrary, when multiple candidates state they prefer a single political party, the voters cannot know from the ballot which candidate, if any, the party actually endorses. Allowing multiple candidates to state they prefer a single political party, in

addition, may dilute the party's support among those candidates. Given these considerations, an otherwise well-supported candidate with "No Party Preference" could, at least theoretically, benefit from the statutory scheme. *Rosen* does not, therefore, dictate a contrary outcome to the one we reach in this case.

Chamness' claim that the law violates the Election Clause under *Cook v. Gralike*, 531 U.S. 510 (2001), also fails. In that case, a state constitutional amendment instructed members of the state's legislature to support term limits for members of the U.S. Congress. *Id*. at 514–15. Those who did not had the words "DISREGARDED VOTER'S INSTRUCTIONS ON TERM LIMITS" printed next to their name on the ballot in a subsequent election. *Id.* The label thus forced candidates to appear on the ballot next to a derogatory message, specifically telling voters that the candidate was unfaithful to the constitutional instruction. *Id*. The Court held that requiring the label violated the Election Clause because doing so dictated the electoral outcome by favoring a class of candidates. *Id*. at 525–26.

The law in this case does not, like the one in *Cook*, promote a specific class of candidates who took certain action. It is not pejorative or slanted toward a particular viewpoint. *See Bowen*, 199 Cal. App. 4th at 363. In *Rubin*, this court acknowledged as much when it stated the constitutional provision "stands in stark contrast" to the law in that case. 308 F.3d 1015–16. Because SB 6 does not dictate political outcomes or invidiously discriminate against

a class of candidates, it is not analogous to the statute invalidated in *Cook*.[6]

## B.  Case No. 11-56303

Galacki argues the trial court erred in denying his motion to intervene.  We disagree.

This court "review[s] the denial of a motion to intervene as of right *de novo*, with the exception of the timeliness prong, which we review for abuse of discretion*." Citizens for Balanced Use*, 647 F.3d at 896.

The Ninth Circuit requires an applicant for intervention as of right under Fed. R. Civ. P. 24(a)(2) to demonstrate that

> (1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest.

*United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002)).  "Each of these four requirements must be satisfied to support a right to intervene." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th

---

[6] Plaintiffs also argued in their briefs that the trial court erred in allowing Maldonado, CDOP, and CIVP to intervene in this case. At oral argument, plaintiffs' counsel conceded the point is now moot.

Cir. 2003). While "Rule 24 traditionally receives liberal construction in favor of applicants for intervention[,]" *id.*, it is incumbent on "[t]he party seeking to intervene [to show] that all the requirements for intervention have been met." *Alisal*, 370 F.3d at 919.

The third requirement is dispositive here. "In analyzing timeliness, we focus on the date the person attempting to intervene should have been aware his interest[s] would no longer be protected adequately by the parties, rather than the date the person learned of the litigation." *Bates v. Jones*, 127 F.3d 870, 873 (9th Cir. 1997) (internal quotation marks omitted) (alteration in original).

The trial court did not abuse its discretion in deciding Galacki failed to file a timely motion to intervene. As the court noted, Galacki knew of the law he wished to challenge, and the effects it would have, well before the time he filed his motion. As Galacki acknowledges in his brief, he requested write-in nomination papers on June 14, 2011, and the statutory deadline to file write-in nomination papers for the election passed on June 28, 2011. At that time, at the very latest, he became aware he would not be allowed to run as a write-in candidate. However, he waited until July 14, 2011, to file his motion, by which time (1) the parties had submitted a joint case management report to the district court expressing the unanimous view that the case was likely to be resolved at the summary judgment phase; (2) plaintiffs Chamness, Frederick, and Wilson had filed a motion for summary judgment and defendants had responded; and (3) the court had taken the motion under submission and indicated its intent to rule on the briefs. Under these circumstances, the trial court acted well within its discretion in concluding that allowing Galacki to intervene would entail substantial delays

and inefficiencies resolving the case, and in therefore denying Galacki's motion as untimely.[7]

## IV.  Conclusion

For the foregoing reasons, we affirm the trial court's order granting defendants summary judgment and denying Galacki's motion to intervene.

**AFFIRMED.**

---

[7] Because we affirm the denial of Galacki's motion to intervene on timeliness grounds, we do not reach the district court's alternative holding that Galacki failed to demonstrate that his claims are distinguishable from the other plaintiffs' claims.